THOMPSON, Presiding Judge.
Oscar David Chunn, Jr. (“the father”), and Mary Katherine Chunn (“the mother”) were divorced by a March 8, 2010, judgment of the Shelby Circuit Court (“the trial court”). The divorce judgment incorporated an agreement reached by the parties. At the time the divorce judgment was entered, the father was unemployed. *988 The divorce judgment provided, among other things, that the father pay $250 per month in child support until he found new employment, at which time the child-support obligation would be modified. On October 18, 2010, the trial court entered a new judgment that incorporated an agreement of the parties in which it modified the father’s child-support obligation to $675 per month.
On September 6, 2013, the father filed a petition seeking a modification of his child-support obligation in which he alleged a “substantial and continuing” material change in circumstances; the father stated in that petition that he had lost his job in July 2013. The father's modification action was assigned case number DR-10-0063.02. On October 11, 2013, the mother answered and denied that the father was entitled to a reduction in child support. Also on that date, the mother filed a petition seeking a recalculation of child support and an order requiring, among other things, that the father contribute to the payment of certain expenses for the children. The mother’s modification action'was assigned case number DR-10-0063.03. On October 21, 2013, the mother initiated an action seeking to have the father held in contempt for his failure to pay child support as ordered in the October 18, 2010, modification judgment. The trial court, ex mero motu, consolidated all the pending actions and claims into one action to which it assigned case number DR-10-0063.04, and it dismissed without prejudice case numbers DR-10-0063.02 and DR-10-0063.03.
The trial court conducted an ore tenus hearing. On September 16, 2014, the trial court entered a judgment in which it denied both parties’ claims for a modification of child support, determined that the father was in contempt for failure to pay child support, and determined the father’s child-support arrearage. In addition, the trial court ordered the father to pay amounts toward the children’s orthodontic expenses, and it ordered the father to pay the mother’s attorney an attorney fee. The father filed a postjudgment motion, and the trial court denied that motion. The father timely appealed.
The father first argues that the trial court erred in finding him voluntarily unemployed or underemployed; he contends that such a finding is not supported by the evidence. The Rule 32, Ala. R. Jud, Admin., child-support guidelines require that, in any action involving a claim for child support or a modification of child support, the parties shall submit certain forms to the trial court and that those forms “shall be of record and shall be deemed to be incorporated by reference in the court’s child-support order.” Rule 32(E), Ala. R. Jud. Admin.; see also T.C.S. v. D.O., 156 So.3d 418, 420 (Ala.Civ.App. 2014) (discussing the requirement that the child-support forms be submitted by the parties and incorporated into the trial court’s judgment); and Famell v. Famell, 3 So.3d 203, 205-06 (Ala.Civ.App.2008) (same). The CS-42 child-support form completed by the trial court and contained in the record indicates that the trial court determined the father’s gross monthly income to be $4,500 per month and that his child-support obligation, calculated pursuant to the child-support guidelines, should be $718 per month. However, the trial court did not modify the father’s child-support obligation to reflect that calculation. Rather, in its September 16, 2014, judgment, the trial court denied the parties’ claims seeking a modification of child support.[1] It appears that, in reaching that ruling, the trial court determined that the parties had not met their burdens of proof. *989 The father has also raised as an issue in his appellate brief an argument that the trial court erred in failing to modify his child-support obligation. We reach that issue first.
In order to prevail on a claim seeking a modification of child support, the parent seeking the modification has the burden of demonstrating “a material change in circumstances that is substantial and continuing.” Rule 32(A)(3)(b), Ala. R. Jud. Admin.; Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997); and Griggs v. Griggs, 638 So.2d 916 (Ala.Civ.App.1994). “Further, when[, as here,] the judgment establishing the support obligation ‘is based on an agreement between the parties, the decree should not be modified except for clear and sufficient reasons and after thorough consideration and investigation.’ ” Pendegraph v. Pendegraph, 628 So.2d 849, 850 (Ala.Civ.App.1993) (quoting Tucker v. Tucker, 588 So.2d 495, 497 (Ala.Civ.App.1991)) (emphasis added). The needs of the children are the primary-concern in determining a claim seeking a modification of child support, taking into account the ability of the parents to pay. Simmons v. Simmons, 600 So.2d 305, 305 (Ala.Civ.App.1992). Also, child-support modification is an issue within the discretion of the trial court, and the trial court’s judgment will be reversed only upon a showing of an abuse of that discretion. Pendegraph v. Pendegraph, 628 So.2d at 850; Love v. Love, 623 So.2d 315, 317 (Ala.Civ.App.1993).
The record indicates that between 2007 and 2010 the father was employed in the banking industry earning approximately $70,000 per year. He then worked at another bank, earning approximately $60,000 annually. The father left that job to work at a business called “Alabama Small Business Capital,” earning approximately $90,000 a year; he lost that job in July 2013 after that'business failed.
The father' also graduated from Birmingham School of Law; the date of his graduation is unclear, but appears to be sometime in 2012. The father was licensed as an attorney at the time of the September 9, 2014, hearing in this matter, and he represented himself below; the father is represented by counsel on appeal.
The father testified that since he lost his job in July 2013 he had applied for approximately 100 positions and that he had interviewed for 4 of those positions. The father submitted into evidence documents indicating that he had applied for approximately 40 employment positions. On questioning from the mother, the father admitted that most of the documentary evidence of his employment search indicated that he had applied for jobs after he filed his claim seeking a modification of his child-support obligation and that most of the documents indicated job applications that the father had made in 2014, well after he lost his job in July 2013. The father stated that he had been searching for employment since shortly before he lost his job and that he had not retained documentary evidence of all of his applications, especially the earlier ones.
The father initially testified that he had had four job interviews. On questioning from the mother, however, he stated that he had traveled out of town for “numerous” job interviews.
The mother questioned the father about trips out of town that he has taken since losing his job in July 2013. The father testified that he did not know how many times he had been out of town. In response to questioning by the mother on the issue of his out-of-town trips or other expenses, the father often responded by stating that he did not recall the events or details of the occasions that were the sub *990 ject of the question. The father denied making a beach trip in August 2013, but he stated that he went to Pensacola, Florida, at'that time.for a job interview. The father stated that he “would think” that he was in Pensacola for three to five days on that trip. The father testified that he believed he traveled for a job interview in September 2013, but he stated that he could not recall where he went on the September 2013 trip or who accompanied him on the trip. The father admitted that he had asked the parties’ daughter to take care of his dogs in September 2013, and he admitted that he would have done so only if his current wife (“the wife”) accompa-nie<l him 'on his trip. The father initially testified that he could not recall taking’a December 2013 trip to Pensacola, Florida, and .the mother pointed out that, in his deposition testimony, he had stated that he had made that trip but that he could not recall who went with him or how-long he was gone. At the hearing in this'matter, the father stated that he believed the December 2013 trip was for a job interview and that his wife had paid for the trip.
The father and his wife traveled to Chicago at Thanksgiving 2013 to visit the wife’s family. The father testified that, in the fall of 2013, some of his wife’s friends canceled a planned trip to the Bahamas and that the father and his wife were able to go' in place of the friends with the airfare and hotel paid for by the friends. When asked who went with the father and his wife on that trip to the Bahamas, the father testified that he had no idea of the wife’s friends’ names and that he did not recall where the parties stayed during that Bahamas trip. When asked what the parties did on that trip, the father stated only “just things in general.” The father testified that he and his wife did not eat out while they were on that trip, and he estimated that they spent approximately $50 while in the Bahamas.
In September 2013, at approximately the same time he filed his claim seeking the modification of his child-support obligation, the father unilaterally began paying the mother $250 per month in child support.[2] The father testified that he based his decision to reduce the amount he paid in child support upon a calculation he performed under the Rule 32 child-support guidelines. The father explained that, in making that calculation, he used as his gross income the $1,060 per month he received in- unemployment-compensation benefits. The father later testified that, in using that figure in performing his own calculation of child support, he had imputed to himself income only at a minimum-wage level; imputation of income at the current minimum wage would actually result in an income of $1,247 per month.[3] The father- also testified that, in the fall of 2013, he officiated at youth-football games and was paid approximately $100 per week; he did not include that income in his calculation in determining the amount of child support he elected to pay after September 2013.
The father submitted into evidence an exhibit containing copies of the canceled checks for the child support he paid between September 2013 arid the date of the *991 hearing,[4] .As.a part of that exhibit, the father also- submitted into evidence copies of one-page portions of his credit-union account statements. The pages.of those statements indicated that the child-support checks had cleared his checking account. Some of those pages from the father’s credit-union account statements also indicated that the father had made, deposits into his checking account.
The mother submitted into evidence copies of the entire statements from the father’s credit-union accounts for the months of January 2013 through March 2014. The father did not produce his credit-union account records for the six months from March 2014 to the September 2014 hearing. The credit-union account statements the father did produce indicate that the father received his full salary in July 2013 and that he began receiving unemployment-compensation benefits in that month. The next month, August 2013, the father received a payment from his former employer for what appears to be half of his monthly salary; the father also received unemployment-compensation benefits during August 2013.
The father continued to receive unemployment-compensation benefits of $265 per week through the end of January 2014. In addition, the father made deposits into either his checking account or what appears to be a savings account, for every month between August 2013 and March 2014, except for January 2014. The father also transferred money from the savings account to the checking account. Those monthly deposits into the father’s credit-union accounts, not including the unemployment-compensation benefits the father received, averaged approximately $4,150 for the period of August 2013 through March 2014, the months for which the father produced his credit-union account statements. When the unemployment-compensation benefits the father received through the end of January 2014 are included in the calculation of the father’s monthly net income, the father had deposits averaging approximately $5,000 for those months.
The mother questioned the father regarding the source of the deposits, other than those for unemployment-compensation benefits, into his credit-union accounts. The father testified that he assumed that his wife made those deposits so that he could pay bills, but he also stated that he did not know the source of the deposits and that he did not closely monitor the accounts. In response to specific questioning by the mother, the father answered that he could not say definitively that his wife had made those monthly deposits into his credit-union accounts. The father testified during the hearing in this matter that his wife has access to the credit-union accounts and that she makes deposits into those accounts. The father stated that his wife owns her own business and that she deposits her income into his credit-union accounts. The mother pointed out that, during his deposition in this matter, the father had stated that his wife’s income was not deposited into the credit-union accounts; the father stated that he had misspoken during his deposition.
, The mother also questioned the father about aspects of his ability to pay for entertainment expenses, other than vacations and out-of-town trips, during .the time he had unilaterally reduced his child-support contributions. The father admitted that in March 2013 he spent more *992 money on concert tickets for himself, his wife, and the parties’ daughter than he contributed for child support. On questioning from the mother, the father denied attending three additional concerts in July and August 2014. However, in her questioning, the mother pointed out that the father has failed to produce his credit-union account statements for the months after March 2014 so that she could not verify whether the father had spent amounts on those tickets.
The father argues that his inability to pay the $657 in monthly child support as ordered in the October 18, 2010, modification judgment is undisputed. However, the trial court received ore tenus evidence, and its judgment based on that evidence is afforded a presumption of correctness on appeal. Smith v. Smith, 887 So.2d 257, 262 (Ala.Civ.App.2003). Moreover, when the trial court receives ore tenus evidence, it is in the best position to evaluate the demeanor and credibility of a witness, even if that witness is the sole witness or the only witness to provide testimony on some question of fact. Id.; see also Wells v. Wells, 69 So.3d 192, 196 (Ala.Civ.App.2011) (“[T]he trial court, in its role as fact-finder, was able to evaluate [a witness’s] demean- or and credibility, and it was free to reject her testimony as being not credible.”). Thus, although the father was the sole witness to testify regarding his efforts and ability to locate employment, the ore tenus rule applies to the trial court’s interpretation of that evidence; our supreme court has explained:
“The ore tenus rule is grounded upon the principle that when the trial court hears oral testimony it has an opportunity to evaluate the demeanor and credibility of witnesses. In this case, the trial court observed one witness testify concerning this issue and made a determination of credibility. The fact that this determination was negative does not entitle us to ignore it. The fact remains that' the trial court, having heard the testimony of one witness, is in a better position to resolve conflicting evidence than are we who must rely solely on written documents. Therefore, we accord the trial court’s finding a presumption of accuracy, and we examine the record only to determine if that finding was clearly erroneous.”
Hall v. Mazzone, 486 So.2d 408, 410-11 (Ala.1986).
In this case, the mother questioned and disputed the father’s claims that he is unable to pay child support. The record indicates that the father has had large monthly deposits into his credit-union accounts, and, although the father stated that his wife “probably” made those deposits, he could not or would not testify with any certainty that his wife did so. Thus, the record does not definitively demonstrate that the father is without some source of income; the trial court was free to conclude that the father had a source of income from which he was making monthly deposits into his credit-union accounts.
The father represents in his brief on appeal that his wife has been supporting him financially and that he has used his savings to meet his own and the children’s expenses. However, as explained, the father could not or would not state definitively who made the monthly deposits into his credit-union accounts. Further, the evidence in the record indicates that some of those deposits were made into the father’s credit-union savings account and then transferred, sometimes over the course of several transactions, to the father’s credit-union checking account. The number of monthly transfers between the father’s credit-union accounts could support a conclusion that the father’s testimony that he did not monitor his accounts *993 closely was not credible. The father presented no evidence tending to indicate that his wife had the authority to transfer, or had ever transferred, money between his various credit-union accounts.
The father contends in his brief on appeal that he used his savings to pay “a reduced amount of child support and insurance” after he lost his job. The credit-union account statements the father submitted indicated that the father’s savings-account balance decreased by almost $5,000 between September 1, 2013, and March 2014, the last month for which the father provided his account statements. During that time, it is undisputed that the father did not pay for the children’s health insurance, and he paid only a total of $1,750 in child support, which was less than half of the amount removed from his savings account. The record indicates, however, that the father traveled during that time. The father explained that much of his trip to the Bahamas was paid for by others, and he stated that the other trips about which the mother questioned him were probably for job interviews, although he could not recall enough to provide any details about those trips, such as whether the trips were also used as vacation trips. The father also admitted that, in one month, he elected to pay more for concert tickets than he chose to pay in child support for the parties’ children, and the trial court could have disbelieved the father’s denials that he did not attend other concerts during the summer of 2014. We also note that the record indicates that the father’s retirement account at the credit union had remained untouched during the period in which he elected to reduce his child-support payments, but the record indicates that the mother has cashed in some of her retirement savings in order to meet the family’s expenses.
The father is correct that the trial court is not able to ignore undisputed evidence of a parent’s inability to pay child support. See Poh v. Poh, 64 So.3d 49, 57-58 (Ala.Civ.App.2010). In this case, however, we cannot conclude that the father’s inability to pay child support is undisputed. The trial court could also have based its decision to deny the father’s petition to modify child support on a conclusion that the father failed to meet his evidentiary burden of demonstrating a need for the modification.
Given the evidence in the record, this court must concede that the trial court could have questioned the father’s credibility regarding certain aspects of his testimony and also discounted the father’s insistence that he was' unable to pay child support. See Clemons v. Clemons, 627 So.2d 431, 434 (Ala.Civ.App.1993) (after receiving ore tenus evidence, the trial court may determine what testimony it considers truthful and disregard some or all of a witness’s testimony if it determines the witness testified falsely on a material issue); see also Flint Constr. Co. v. Hall, 904 So.2d 236, 250 (Ala.2004) (same), and Summers v. Summers, 58 So.3d 184, 188 (Ala.Civ.App.2010) . (same). This court might not have reached the same result as did the trial court. However, this court may not reweigh the ore tenus evidence. Ex parte 933 So,2d 1081 (Ala.2005). Accordingly, we conclude that the record supports a determination that the father failed to meet his burden of demonstrating the need for a reduction of his child-support obligation.
In their briefs on appeal, both parties assume that the trial court imputed income to the father based on a finding that he was voluntarily unemployed. The Rule 32, Ala. R. Jud. Admin., child-support guidelines provide that, in determining a parent’s child-support obligation, a trial *994 court may impute income to a parent upon finding that that parent is voluntarily unemployed or underemployed:
“(5) Unemployment; Underemployment. If the court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income; the court shall calculate child support based on that parent’s imputed income. In determining the amount of income to be imputed to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earning level. of that parent, based on that parent’s recent work history, education, and occupational qualifications, and on the prevailing job opportunities and. earning levels in the community. The court may take into account the presence of a young or physically or mentally disabled child necessitating the parent’s need to stay in the home and therefore the inability .to work.”
Rule 32(B)(5), Ala. R. Jud. Admin.
The trial court, however, did not make an explicit finding in its September 16, 2014, judgment that the father was voluntarily unemployed or underemployed. Our caselaw has held that a determination that a parent is voluntarily unemployed or underemployed may be implicit in a trial court’s judgment. See Bittinger v. Byrom, 65 So.3d 927, 933-34 (Ala.Civ.App.2010) (concluding that' the trial court made a finding of voluntary underemployment when it based its determination of the father’s income for child-support purposes on a salary he had earned at a previous job); Suggs v. Suggs, 54 So.3d 921, 924 (Ala.Civ.App.2010) (“Although the trial court, in its judgment, did not explicitly conclude that the father was voluntarily unemployed, such a finding was implicit in the judgment that imputed income to the father despite his unemployment.”); Jackson v. Jackson, 999 So.2d 488, 493 (Ala.Civ.App.2007) (reversing an implicit finding that a parent was voluntarily unemployed and imputing full-time wages to that parent after concluding the evidence did not -support a finding of voluntary unemployment); and Schiesz v. Schiess, 941 So.2d 279, 287 (Ala.Civ.App.2006) (determining that the trial court made an implicit finding that the husband was voluntarily underemployed when it “specifically determined that the husband had the potential to earn more income in 2002 than he actually received”).
We do not necessarily agree that the trial court did, in fact, impute income to the father. The CS-42 child-support form signed by the trial court indicates that the trial court made a calculation of child support under the guidelines by using a monthly- gross income of $4,500 for the father. However, the trial court did not modify child support to reflect the $718-per-month obligation for the father, under the guidelines, based on that amount of income. We note that the $4,500 figure used by the trial court on that form to determine the father’s gross monthly income is in the approximate range of the total monthly deposits into the father’s credit-union accounts,[5]' and it is possible that the trial court determined that that was the amount of the father’s gross monthly income from a source that constitutes income under the Rule 32 child-support guidelines. '
Out of an abundance of caution, however, we briefly address the parties’ argu *995 ments based on the assumption that the trial court made an implicit determination that the father was voluntarily unemployed and, based on that determination, that it imputed income to.the father. In doing.so, we note that, in his brief on appeal, the father does not mention the amount of income the trial court purportedly imputed to him or argue that the amount imputed should be less. Rather, he appears to argue that the trial court erred in imputing any income to him.[6]
In his appellate brief, the father relies on Tatum v, Carrell, 8.97 So.2d 313 (Ala.Civ.App.2004), in arguing that the • trial court erred in determining that he was voluntarily unemployed. In Tatum v. Carrell, the father had been unemployed for almost three years; he presented evidence indicating that he had applied for hundreds of jobs in a number of states and that he had not received a job offer. The court noted that the mother in that case had not disputed “the father’s qualifications for the jobs he sought, the geographic area of the search, the salary- sought, or the father’s willingness to accept employment” and that she had not questioned whether the father had made a good-faith effort to find employment. Tatum v. Carrell, 897 So.2d at 324. This court reversed-the trial court’s judgment imputing income to the father in that case, concluding that the evidence demonstrated that- the father in that case was involuntarily unemployed. Tatum v. Carrell, supra,
In this case, in his brief submitted to this court on appeal, the father contends that the evidence in this case is similar to that in Tatum v. Carrell, supra. The father points. out, that he was terminated from his job in July 2013, and he argues that he has looked for work since that time.. However, in this case, unlike in Tatum v. Carrell, supra, the mother questioned whether the father was making a good-faith effort to locate employment by questioning the diligence of the father’s job search and to some extent, the father’s qualifications for the employment positions for which he-applied.[7] “[T]his court-has recognized that the testimony of one witness alone at trial does not eliminate the application of the ore tenus rule.” Daniels v. Daniels, 4 So.3d 479, 483 (Ala.Civ.App.2007) (rejecting the husband’s argument that he was not voluntarily unemployed when, only the-wife testified on the issue of his employment history).
Our review of the record indicates that there is a basis to question the father’s-credibility and that the'trial court could have reasonably questioned the father’s assertions that he was looking for employment. Although this court is confined to its review of the cold transcript-, that review indicates that the - father’s responses to questioning by the mother were evasive and that, at times, those responses could be interpreted as uncooperative. It is the duty of this court “to affirm the trial court’s judgment if it is fairly supported by credible evidence, ‘regardless of our own *996 view of that evidence or whether we would have reached a different result had we been the trial judge.’ ” Griggs v. Griggs, 638 So.2d 916, 919 (Ala.Civ.App.1994) (quoting Young v. Young, 376 So.2d 737, 739 (Ala.Civ.App.1979)). Given the evidence in the record, we are unable to say that the father has demonstrated that the trial court erred if it imputed income to him based on a finding that he was voluntarily unemployed.
The father also contends that the trial court erred in finding him in contempt for his failure to pay child support as required in the October 18, 2010, modification judgment. The trial court made no determination or ruling regarding any sanction against the father for the contempt; it merely stated that it determined that the father was in contempt for his failure to pay child support. In doing so, the trial court made no determination whether the father was in criminal contempt or civil contempt. Generally, a willful failure to pay child support is held to be a form of civil contempt. Davenport v. Hood, 814 So.2d 268, 275 (Ala.Civ.App.2000). Whether a parent is in .contempt for a failure to pay child support is a determination within the discretion of the trial court. T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002); Poh v. Poh, 64 So.3d at 61.
“When a parent is ordered to pay child support and fails to do so, a lack of ability to pay a delinquent amount is a complete defense to a civil contempt proceeding regarding the delinquent child support. In such a case, if the obligated parent presents evidence that [his] failure to pay the delinquency is due to financial inability, the burden then shifts to the parent to whom child support is due to prove beyond a reasonable doubt that the obligated parent is financially able to pay the amount of child support ordered. If a person is found in civil contempt because of [his] failure to pay a certain amount of money, and [he] shows that [he] is unable to pay that amount, then the contempt order must be set aside.”
Carr v. Broyles, 652 So.2d 299, 301-02 (Ala.Civ.App.1994) (internal citations omitted).
In arguing that the trial court erred in finding him in contempt, the father reasserts the same arguments he made with regard to the two previous issues addressed in this opinion, i.e., that he is unemployed and unable to pay child support. However, as we have previously explained in our analysis of the previous arguments, the record supports a determination that the father is voluntarily unemployed or that he has a source of income. The evidence demonstrates that amounts were regularly deposited into the father’s credit-union accounts for the months for which he produced his credit-union account statements. Further, the record indicates that the father received income from his employer in July 2013 and a reduced amount of income from his former employer in August 2013. The father then sought a reduction in his child-support obligation and unilaterally reduced the amount of child support he paid to the mother from $657 per month to $250 per month. However, the father continued to meet his own expenses in the amount of $4,000 to $5,000 per month and to make out-of-town trips about which his testimony was vague or evasive. Also, in one month, the father chose to spend more on concert tickets than he contributed in child support, and the trial court could have disbelieved the father’s testimony that he did not attend additional concerts during the time he had unilaterally reduced his child-support payments. The father’s credit-union account statements also indicate that the father *997 had a retirement-savings account from which he made no withdrawals during the time he elected to reduce his child-support payments. Thus, the evidence supports a conclusion that, after he lost his job in July 2013, the father had methods of meeting his child-support obligation or at least making a more substantial contribution to the support of his children but that he elected not to do so. Given the evidence in the record on appeal, we cannot say that the father has demonstrated that the trial court abused its discretion in finding him in contempt for his failure to pay child support as ordered in the October 18, 2010, modification judgment.
The father also argues that the trial court erred in finding him in contempt for his failure to contribute to the orthodontic expenses for the children. The parties’ divorce judgment provides that the parties shall agree to the costs of orthodontic expenses and split the costs evenly; however, if the mother failed to notify the father of those expenses, the mother was to be responsible for the full expense, The mother testified at the ore tenus hearing that she had not notified the father of the cost of orthodontic treatment for the children and that she had not sought reimbursement for her payment of those expenses. Therefore, the father contends, he was not “contractually bound” to contribute to those expenses for his children. A settlement agreement incorporated into a judgment may not be enforced on a breach-of-contract theory, see Turenne v. Turenne, 884 So.2d 844, 849 (Ala.2003), but a judgment is to be construed in the same manner as a contract, i.e., according to its clear terms. State Pers. Bd. v. Akers, 797 So.2d 422, 425 (Ala.2000). Given the language of the divorce judgment, we must agree that the trial court erred in ordering the father to reimburse the mother for a portion of those orthodontic expenses and in finding him in contempt for his failure to contribute to those expenses earlier. We reverse that part of the trial court’s September 14, 2014, judgment finding the father in contempt for his failure to pay for orthodontic expenses for the children and requiring him to pay a portion of those expenses.
The father last argues as part of his argument on the issue of contempt that the trial court erred in ordering him to pay a portion of the mother’s attorney fees. Section 30-2-54, Ala.Code 1975, provides:
“In all actions for divorce or for the recovery of alimony, maintenance, or support in which a judgment of divorce has been issued or is pending and a contempt of court citation has been made by the court against either party, the court may, of its discretion, upon application therefor, award a reasonable sum as fees or compensation of the attorney or attorneys representing both parties.”
It is not clear whether the trial court based its award of an attorney fee on a finding of contempt. Even in the absence of a contempt finding, a trial court has the discretion to award a parent an attorney fee in an action involving the modification of child support. Robbins v. Payne, 84 So.3d 136, 139-40 (Ala.Civ.App.2011); Holliday v. Holliday, 590 So.2d 335 (Ala.Civ.App.1991).
We have affirmed the trial court’s determination that the father was in contempt for his failure to pay child support. Thus, an attorney-fee award is supported because of that finding. Further, the mother presented evidence in support of her claim for an attorney fee, including the testimony of her attorney, who testified regarding the firm’s hourly rates and stated that a paralegal had been used when possible to keep the mother’s legal expenses as low as *998 possible. The attorney testified that discovery had been extensive and that numerous subpoenas had had to be issued; she stated that “[i]t really sort of took sort of jumping through every hoop we could to obtain the things that we were asking for and it required a great deal of time.” Given the record on appeal, we cannot say that the father has demonstrated that the trial court erred in awarding the mother an attorney fee. The father has made no argument regarding the specific amount of the attorney fee awarded or that the amount of the fee was excessive; therefore, any such argument.is waived. Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ., concur..

. The mother has not appealed the denial of her claims asserted in the trial court.

. After discovery was completed in this matter, the father began paying $261 per month in child support; .he testified that .he had adjusted the amount he had unilaterally determined was the appropriate child-support amount using a different income for the mother after he had received discovery regarding her monthly gross income.-

. The current minimum wage is $7.25 an hour. That amount, multiplied by 40 hours of work each week and 4.3 weeks in each month, results in a monthly income of $1,247.

. The father also submitted evidence indicating that he paid child support' in months before September 2013; however, because the amount he paid for those earlier months is not at issue, we do not set forth that evidence,

. The father has not challenged the specific amount of income attributed to him by the ■trial court in that form, and. this opinion should not be interpreted as commenting on the propriety of the' amount used for the father’s gross monthly income on that form.

. As explained in this opinion, in calculating what he believed was an appropriate amount of child support after February 2014, when his unemployment-compensation benefits ceased, the father used figures purportedly equal to the minimum wage in determining his own monthly gross income. See note 3 and accompanying text, supra. In his brief on appeal, however, the father repeatedly takes issue with the trial court’s "imputing income” to him.

. The father applied for some out-of-state positions for which he would not be qualified to work as an attorney because graduates of Birmingham School of Law may be licensed to practice law only in Alabama. The father stated that he had applied for "a legal position,” and not to work as an attorney in another state.