Rel: August 29, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2025

————————————————

### SC-2024-0396

————————————————

**Ex parte State of Alabama ex rel. Robert Broussard, District Attorney for the Twenty-Third Judicial Circuit**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CIVIL APPEALS**

**(In re: Jeremy S. Mitchem**

**v.**

**State of Alabama ex rel. Robert Broussard, District Attorney for the Twenty-Third Judicial Circuit)**

**(Madison Circuit Court: CV-20-901674;
Court of Civil Appeals: CL-2023-0412)**

SHAW, Justice.

On behalf of the State of Alabama, Robert Broussard, the district attorney for the Twenty-Third Judicial Circuit ("the State"), petitioned this Court for a writ of certiorari to review the Court of Civil Appeals' decision in Mitchem v. State ex rel. Broussard, [Ms. CL-2023-0412, May 3, 2024] ___ So. 3d ___ (Ala. Civ. App. 2024). In Mitchem, the Court of Civil Appeals reversed the judgment of the Madison Circuit Court ("the trial court") condemning $6,646 in cash ("the currency") seized from Jeremy S. Mitchem. This Court granted the certiorari petition; we reverse and remand.

Facts and Procedural History

In December 2020, the State filed a complaint in the Madison Circuit Court seeking to condemn and forfeit, pursuant to the former version of § 20-2-93, Ala. Code 1975 (which has since been amended effective January 1, 2022), the currency as money "furnished or intended to be furnished in exchange for a controlled substance in violation of Alabama law and/or [as] proceeds of a controlled substance exchange." Mitchem filed an answer denying the allegations in the State's complaint and requesting a hearing.

2

During the subsequent trial, the State presented the testimony of Deputy Jesse McKinney of the Madison County Sheriff's Office to recount the circumstances leading to the seizure of the currency. Deputy McKinney testified that, in November 2020, he and his patrol partner had, while parked at a gas station, noticed a vehicle with an expired tag that "had been sitting [at the gas pumps] for ... a strange amount of time and ... wouldn't leave." Once the vehicle ultimately did pull away from the gas station, they attempted to initiate a traffic stop, but the driver of the vehicle refused to pull over. The ensuing pursuit covered approximately 26 miles, reached speeds up to 100 miles per hour, and concluded only when the vehicle being pursued, which was being driven by Mitchem, collided with another law-enforcement vehicle.

During a search of the vehicle, which apparently was not titled in Mitchem's name, Deputy McKinney indicated that officers recovered "a variety of different drugs and narcotics and a decent sum of money."[1] According to Deputy McKinney, the drugs recovered from the vehicle

---

[1]Because of its frequent use in the record, the colloquial term "drugs" is used interchangeably for "controlled substances" throughout this opinion.

included methamphetamine, pills of various types, what was believed to be a drug known as "molly," and a water bottle believed to contain GHB.[2] In addition, the currency was found on Mitchem's person.

The State next presented testimony from Investigator Josh Moseley, also of the Madison County Sheriff's Office, who had interviewed Mitchem. Investigator Moseley testified that, after advising Mitchem of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), the following occurred during the interview:

> "We asked him about the drugs and the money that were located. Mr. Mitchem stated that he was the only occupant in the vehicle and all the drugs found were his. Mr. Mitchem stated that he sells narcotics because -- and I quote 'It's hard out here.' He stated that he sells a quarter ounce of weed for sixty dollars, a whole ounce of weed for a hundred and twenty dollars, and an ounce of ICE or methamphetamine for six hundred dollars."

Investigator Moseley confirmed that the currency was recovered from Mitchem's person.

Mitchem also testified at the hearing. He admitted that he had "been arrested quite a bit" and that, previously, he had been convicted of

---

[2]During trial, the State referenced that the recovered substances included "meth, GHB, Suboxone, and Xanax."

trafficking in methamphetamine in 2018. However, he claimed that he did not "remember" several other purported drug-related arrests referenced by the State. Further, the State submitted evidence, without objection, indicating that, more recently, Mitchem had been convicted of trafficking in a controlled substance.

Mitchem further denied either possessing or knowing about the controlled substances recovered in the vehicle and denied that the pursuit had exceeded 100 miles per hour. He testified that, because his own vehicle was inoperable, he had borrowed a vehicle to pick up some mail from his mother's residence and to deliver Thanksgiving dinner to an acquaintance. He attributed his decision to flee the initial traffic stop to the fact that he "had warrants." As to the source of the currency, Mitchem testified: "And as far as the money that was on my possession [sic], I was buying the vehicle -- my dad had gave me [sic] that money to buy a vehicle. So that's where the money came from, as far as that goes. It had nothing to do with any kind of illegal activities."

After trial, the trial court entered a judgment in favor of the State. More specifically, based on its consideration of the above evidence and testimony, the trial court held that it was "reasonably satisfied that the

5

[State had] established a prima facie case as to [the currency] sought to be forfeited." Following the denial of his postjudgment motion,[3] Mitchem appealed.

On appeal, the Court of Civil Appeals reversed the trial court's judgment based on its conclusion that the trial court's judgment was "against the great weight of the evidence." Mitchem, ___ So. 3d at ___. In response, the State, as explained above, petitioned this Court for certiorari review.

Standard of Review

"On appellate review of a ruling from a forfeiture proceeding at which the evidence was presented ore tenus, the trial court's judgment is presumed to be correct unless the record shows it to be contrary to the great weight of the evidence." Ex parte McConathy, 911 So. 2d 677, 681 (Ala. 2005). "[T]he ore tenus standard is premised on the fact that the

---

[3]Mitchem attached to his postjudgment motion a document signed by his father and described as an affidavit, in which his father indicated that he had given Mitchem sums of money between January 2015 and November 2022. The document, although notarized, does not recite that it was made under oath; thus, it was unsworn. See Ankor Energy, LLC v. Kelly, 271 So. 3d 798, 807-08 (Ala. 2018) ("Without the administering of an oath or the recital on the [handwritten affidavit] that it was being made under oath before [it was signed], the handwritten affidavit was not a sworn document.").

trial court had the opportunity to evaluate the demeanor and credibility of the witnesses." <u>Washington v. Johnson</u>, 402 So. 3d 816, 824 (Ala. 2024). In making such evaluations, the trial court is "free to reject" a witness's testimony "as being not credible." <u>Wells v. Wells</u>, 69 So. 3d 192, 196 (Ala. Civ. App. 2011). "The ore tenus rule does not, however, extend to cloak a trial judge's conclusions of law or incorrect application of law to the facts with a presumption of correctness." <u>$3,011 in United States Currency v. State</u>, 845 So. 2d 810, 814 (Ala. Civ. App. 2002).

### Discussion

The State sought forfeiture of the currency under the former version of § 20-2-93(a)(4), which provided, in pertinent part:

> "(a) The following are subject to forfeiture:
>
> "….
>
> "(4) All moneys … furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys … used or intended to be used to facilitate any violation of any law of this state concerning controlled substances."

As this language indicates, money obtained in an illegal drug transaction ("furnished … in exchange") or money that will be used in a

7

later transaction ("intended to be furnished … in exchange") are subject to forfeiture. Under the former version of § 20-2-93, the State is required to "establish a prima facie case for the seizure, condemnation, and forfeiture of the property," and the "standard of proof is reasonable satisfaction." State v. Smith, 578 So. 2d 1374, 1376 (Ala. Civ. App. 1991).

In concluding that the foregoing standard had not been met in Mitchem's case, the Court of Civil Appeals relied heavily on this Court's prior decision in McConathy, supra:

> "In McConathy, our supreme court reversed a judgment ordering the forfeiture of $8,000 in United States currency following the detention of Jeffrey Daren McConathy for possession of a controlled substance. 911 So. 2d at 678. The evidence in McConathy indicated, in pertinent part, that McConathy was arrested after purchasing Xanax pills from a confidential informant and that, following his arrest, McConathy was searched. Police discovered $8,000 in United States currency in his possession. Id. at 678-79. McConathy testified that he had earned the $8,000 from the sale of his oil-change business and that he had no intention of spending the $8,000 to purchase drugs. Id. at 680. Our supreme court noted that '[t]he mere presence of money in the proximity of controlled substances is insufficient to justify the forfeiture of the money.' Id. at 682. It acknowledged that the State of Alabama had failed to establish a connection between the Xanax pills and the $8,000 in United States currency and that there was no direct link between the $8,000 and the supposed future purchase of controlled substances, despite evidence presented by the State indicating that McConathy had indicated that he intended to continue purchasing controlled substances. Id. In concluding that the judgment ordering

8

forfeiture in that case was against the great weight of the evidence, our supreme court stated, in pertinent part:

> "'The fact that McConathy had $8,000 on December 18, 2002, and according to Officer Boyd he led the officers to believe that he was going to continue to purchase controlled substances is insufficient to establish a prima facie case under [former] § 20-2-93, Ala. Code 1975. As the court noted in Gatlin [v. State], [846 So. 2d 1090 (Ala. Civ. App. 2002)], "[a]lthough the evidence presented by the State might lead one to suspect that Gatlin was involved in illegal drug activity, mere suspicion is insufficient to support a judgment of forfeiture." 846 So. 2d at 1093. As was the case in Gatlin, there is no concrete evidence tying the $8,000 to a specific drug transaction, past or future. To say that McConathy would use this $8,000 to purchase controlled substances at a future date is simply speculation, and speculation will not support a judgment of forfeiture.'"

Mitchem, ___ So. 3d at ___ (quoting McConathy, 911 So. 2d at 688). Further persuaded by Mitchem's reliance on Bolden v. State, 127 So. 3d 1195 (Ala. Civ. App. 2012), and his argument, based thereon, that evidence that a defendant had sold drugs at some indefinite time in the past coupled with the discovery of a large amount of cash -- especially in the absence of other items evidencing participation in the drug trade such as scales or packaging (see, e.g., See Gatlin v. State, 846 So. 2d 1090, 1092-93 (Ala. Civ. App. 2002)) and Mitchem's explanation for the source

9

of the currency -- was insufficient to establish that the currency was due to be forfeited, the Court of Civil Appeals held: "[A]lthough the State presented evidence indicating that Mitchem had engaged in the sale of drugs at some indefinite time, <u>there was no concrete evidence tying the currency found on his person to a specific drug transaction</u>." <u>Mitchem</u>, ___ So. 3d at ___ (emphasis added). Accordingly, the Court of Civil Appeals reversed the trial court's judgment.

The State contends that the decision in <u>McConathy</u>, which it deems distinguishable, does not impose a requirement that, to demonstrate entitlement to forfeiture, the State must connect the currency "to a specific drug transaction." As the State notes, application of this phrase appears to have originated in <u>Holloway v. State ex rel. Whetstone</u>, 772 So. 2d 475, 477 (Ala. Civ. App. 2000), in which testimony at a hearing indicated that "authorities were unable to trace [certain currency sought to be condemned] back to 'any specific drug transaction.'" This Court's decision in <u>McConathy</u>, citing <u>Holloway</u>, applied that same factor. Other caselaw has suggested that <u>McConathy</u> requires proof that the money sought to be condemned must be traced to a specific drug transaction. See <u>Blackwell v. State ex rel. Snyder</u>, 266 So. 3d 76, 81 (Ala. Civ. App

10

2018) ("[A]lthough some or all of the currency seized from the claimant might not be traceable to legitimate business enterprises engaged in by the claimant, there remains no evidence linking that money to a specific drug transaction, past or future, in violation of Alabama law, as McConathy would require."), and Wilson v. State, 296 So. 3d 321, 329 (Ala. Civ. App. 2019) (quoting the foregoing language from Blackwell).

While the ability to show that specific currency changed hands in a controlled-substance transaction can be particularly convincing, see Wherry v. State ex rel. Brooks, 637 So. 2d 1353, 1355 (Ala. Civ. App. 1994) (wherein the money seized included bills, identifiable by serial number, that had been previously used in a "controlled buy" of drugs from the defendant by a police informant), it is not mandated; instead, it represents merely one of many potential relevant factors. See, e.g., Gatlin, 846 So. 2d at 1093 (noting various factors "indicative of contemplated or completed drug transactions," including "a large quantity of drugs; drugs packaged for sale; drug paraphernalia or accouterments indicating sale, such as 'baggies' or scales"; and "the inherent incredibility of a defendant's explanation for having in his or her possession a large quantity of cash" (citations omitted)). Other cases

11

demonstrate that connecting the currency to a specific transaction is not required and would not, in every situation, be necessary to demonstrate a prima facie case. See Johnson v. State, 667 So. 2d 105, 108 (Ala. Civ. App. 1995) (explaining that evidence that currency was found on the front seat of the automobile with bags of cocaine and a set of scales supported the trial court's conclusion that the State had met its burden of proving that the money had been used, or had been intended to be used, to facilitate violation of the Alabama Controlled Substances Act), and Moynes v. State, 555 So. 2d 1086, 1089 (Ala. Civ. App. 1989) (upholding the forfeiture of a bag of currency found inside a vehicle along with multiple packages of cocaine and drug paraphernalia). Cf. Winstead v. State, 375 So. 2d 1207, 1208 (Ala. Civ. App. 1979) (affirming condemnation of an automobile under a prior version of § 20-2-93 based on the recovery of "a fairly large amount of a controlled substance along with other items used by a dealer in drugs" from that automobile). Neither McConathy nor Holloway hold that the State is required to demonstrate that money sought to be condemned must be traced to a specific drug transaction.

12

In this case, as the State notes, Mitchem had a variety of different drugs in his possession, had a history of trafficking in controlled substances, freely admitted that he sold drugs, provided his pricing scheme for his drug sales, and even explained why he sold drugs. Further, under the ore tenus standard, it was within the province of the trial court to disbelieve Mitchem's testimony, which was often implausible or contradicted, including disbelieving his explanation of having received the currency from his father. Wells, 69 So. 3d at 196. Thus, unlike in McConathy, in which documentary evidence demonstrated an alternate source of the seized funds and in which it was alleged that the seized funds were going to be used in a future drug transaction, there was no mere "suspicion," Gatlin, 846 So. 2d at 1093, that Mitchem was engaged in the illegal sale of controlled substances and that the currency was the proceeds of such sales. Instead, there was a wealth of detailed admissions from Mitchem himself, and some of the precise controlled substances that he admitted to selling were recovered from the vehicle. Although, as Mitchem emphasizes, there was no "concrete" evidence linking the currency to a specific transaction involving controlled substances, we remain unconvinced, given the

13

deference due the trial court's findings, that the evidence was insufficient to satisfy the State's burden of proof in Mitchem's case.

Conclusion

Based on the foregoing, we conclude that the trial court's judgment finding that the State met its burden of reasonably demonstrating that the currency was subject to forfeiture under former § 20-2-93 was not contrary to the great weight of the evidence. We therefore reverse the Court of Civil Appeals' decision to the contrary and remand the cause to that court for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

Stewart, C.J., and Wise, Bryan, Sellers, Mendheim, Cook, and McCool, JJ., concur.

Shaw, J., concurs specially, with opinion.

Lewis, J., recuses himself.

SHAW, Justice (concurring specially).

I am the author of the main opinion, and I write specially to note the following.

In this case, the ore tenus standard applies.

"When a trial court in a nonjury trial hears oral testimony, the ore tenus standard of review applies. Kennedy v. Boles Invs., Inc., 53 So. 3d 60, 67 (Ala. 2010). Under that standard, the trial court's findings of fact are presumed correct, 'and the trial court's judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.' Lawson v. Harris Culinary Enters., LLC, 83 So. 3d 483, 491 (Ala. 2011). The ore tenus standard or rule is grounded on the principle that, in hearing such testimony, the trial court has the opportunity to evaluate the demeanor and credibility of witnesses, Reed v. Board of Trs. for Alabama State Univ., 778 So. 2d 791, 795 (Ala. 2000), 'and to assign weight to their testimony.' Wehle v. Bradley, 195 So. 3d 928, 934 (Ala. 2015). The trial court is 'in the best position' to perform this evaluation, even if a witness 'is the sole witness or the only witness to provide testimony on some question of fact.' Chunn v. Chunn, 183 So. 3d 985, 992 (Ala. Civ. App. 2015). Further, in making such evaluations, the trial court is 'free to reject' a witness's testimony 'as being not credible.' Wells v. Wells, 69 So. 3d 192, 196 (Ala. Civ. App. 2011). See also Hall v. Mazzone, 486 So. 2d 408, 410-11 (Ala. 1986) ('In this case, the trial court observed one witness testify concerning this issue and made a determination of credibility. The fact that this determination was negative does not entitle us to ignore it.')."

Langley & Watters, LLP v. Gamble, 281 So. 3d 1228, 1231 (Ala. 2018) (Shaw, J., concurring specially).

15

In Ex parte McConathy, 911 So. 2d 677 (Ala. 2005), this Court appeared to place weight on the testimony of the party from whom currency was sought to be forfeited and condemned. However, there also appeared to be documentary evidence from a neutral source to substantiate some of that party's testimony. I express no opinion as to whether the Court in McConathy correctly applied the ore tenus standard but, instead, reiterate that, in nonjury cases in which the trial court sits as the trier of fact, including cases in which a forfeiture is sought under § 20-2-93, Ala. Code 1975, appellate review is constrained by the ore tenus standard.