Maurice B. Thompson appeals from the forfeiture of $8,694. The State of Alabama claimed that the money was due to be forfeited because, it said, it had been used, or was to be used, to facilitate a drug transaction. After an ore tenus hearing, the trial court found that the money had been used, or had been intended for use, in a drug transaction, and it ordered the money forfeited to the general fund of the Alabama Bureau of Investigation's narcotic unit. However, the judgment noted that the forfeiture was being ordered pursuant to §13A-12-30, Ala. Code 1975, which is a gambling statute.
The facts adduced at trial tended to show the following: State Trooper Wilson Hale pulled Thompson over for speeding. Hale said he had Thompson get out of his car and join him in the patrol car. Hale said that Thompson smelled of marijuana when he got in the patrol car. Hale asked Thompson if he had been smoking marijuana, and Thompson responded that he had smoked it earlier in the day. Hale arrested Thompson for driving under the influence of marijuana and alcohol and gave him a speeding ticket.
Because Thompson was arrested for DUI, he was taken into custody and Hale did an inventory search of his car. During the search, Hale found three or four $100 bills on the car's front seat, a shopping bag containing cash, and cash in the glove compartment. The total amount of cash found in the car was $8,694. Hale also found a .54 Glock 9-millimeter pistol, two pagers, a cellular telephone, and a half-pint of gin, among other things. Hale searched Thompson and found in his front pocket a plastic bag containing 4.73 grams of marijuana.
Two law enforcement officials testified that after being read his Miranda rights, Thompson said he had gotten the money from gambling in Biloxi, Mississippi, and from a "shot house" in Pratt City. He later said he won money in Texas, where, he said, he had visited a cousin who plays professional football. When asked whether there were casinos in Texas, Thompson said he had meant to say Louisiana. Thompson was never asked, and he never specified, how much money he had won at any location.
Thompson contends that the trial court erred in ordering the forfeiture of the money *Page 226 
based on its finding that the money had been used, or had been intended for use, in a transaction that would violate the Controlled Substances Act because, he says, there is no evidence to support such a finding.
The state must establish a prima facie case for the forfeiture of property under § 20-2-93, Ala. Code 1975. State exrel. Valeska v. Keener, 606 So.2d 150 (Ala.Civ.App. 1992). That statute is penal in nature and must be strictly construed.Williams v. State, 674 So.2d 591 (Ala.Civ.App. 1995). To make out its prima facie case,
 "[t]he state ha[s] to prove that the money seized was: (1) furnished or intended to be furnished by [Thompson] in exchange for a controlled substance; (2) traceable to such a transaction; or (3) used or intended to be used to facilitate a violation of any law of this state concerning controlled substances."
Wherry v. State ex rel. Brooks, 637 So.2d 890, 892
(Ala.Civ.App. 1994); § 20-2-93(a)(4). The state's standard of proof in a condemnation action is reasonable satisfaction. State v. Smith,578 So.2d 1374 (Ala.Civ.App. 1991). On review of an ore tenus forfeiture proceeding, the trial court's judgment is presumed to be correct unless the record shows it to be contrary to the great weight of the evidence. Id. After reviewing the record, we hold that the judgment is against the great weight of the evidence.
The dissent is correct in saying that circumstantial evidence will support a conviction "as stoutly" as direct evidence. However, in this case, neither circumstantial nor direct evidence supports a finding that the money had been used, or had been intended for use, in a drug transaction.
The circumstantial evidence presented might reasonably lead one to suspect that Thompson was engaged in illegal drug activity. But unlike in Hitler's Germany or in Stalin's Soviet Union, in the United States mere suspicions of illegal activity cannot support the state's decision to confiscate an individual's property. If the state suspects Thompson of dealing in illicit drugs, it must investigate and gather evidence to prove to a reasonable satisfaction that that money was used, or intended to be used, in a drug transaction. Instead, the state shows that Thompson had a lot of cash, and it concludes that he must be involved in illegal drug activities. If we do not like that option, says the state, we can conclude that Thompson was involved in illegal gambling activities.
Based on the evidence before us, a conclusion that Thompson was engaged in illegal drug activity is reached only by speculation and conjecture; speculation and conjecture do not support the state's decision to take the property of an individual. There is simply no evidence, direct or circumstantial, that a drug transaction took place or that the money was used in a drug transaction. To say that Thompson had either just sold drugs or was on his way to buy drugs would be merely guessing. The prosecutor conceded that the 4.73 grams of marijuana found in Thompson's pocket is an amount considered to be for personal use; it is not sufficient evidence from which to determine that Thompson was involved in distributing or trafficking in marijuana.
The evidence presented in this case is analogous to the following situation: A business executive on his way home from a party is stopped for speeding. Because he has the smell of alcohol on his breath, he is arrested for driving under the influence of alcohol. His car is searched, and police find a bottle of bourbon under his car seat, a large amount of cash in his wallet, a cellular phone, two pagers, and a pistol in the glove compartment. From this evidence, the state determines that the executive is a bootlegger and confiscates his money.
The trial court's finding that the money the state sought to condemn in this case had been used, or had been intended for use, in a drug transaction not only goes against the great weight of the evidence, but we are hard-pressed to find any evidence to support such a conclusion. There is no evidence of a drug transaction. We agree with Thompson that the trial court erred in ordering the money forfeited on the grounds that it had been used, or had been intended for use, in a drug transaction.
Thompson also argues that the trial court erred in possibly making the forfeiture a *Page 227 
gambling forfeiture because, he says, there is insufficient evidence to support that finding as well. Although the trial court's specific findings of fact dealt with controlled substances, the trial court said it was awarding the money to the ABI's narcotics unit pursuant to the provisions of §13A-12-30, the gambling forfeiture statute. Section13A-12-30(c) provides that money used as bets or stakes in gambling activity in violation of Alabama law is forfeited to the state.
We agree with the state that the reference to the gambling forfeiture statute is more likely than not a typographical error. From our review of the record, it is easy to see how such a mistake was made. Thompson said that he won the money gambling, and a large amount of time at trial was spent discussing gambling. The record shows that at the close of the state's case, a discussion was had as to whether the state could amend its forfeiture complaint to add a count involving forfeiture of gambling proceeds, and the parties were instructed to brief the issue. From the record, it does not appear that the trial court ruled on the state's subsequent motion to amend, to which Thompson had objected.
Nevertheless, in reviewing the record we find that there is no evidence to show that Thompson violated Alabama's gambling law. Therefore, we hold that even if the trial court had intended to order that the money was to be forfeited pursuant to the gambling statute, the evidence is insufficient to support that finding as well.
As this court has stated in the past, "When the government is empowered by law to confiscate the property of its individual citizens, we must require it to exercise that power with the greatest of care." Dent v. State, 714 So.2d 985 (Ala.Civ.App. 1997). In this case, however, the state seemed bent on seeing that Thompson's money was forfeited, regardless of the reason. A statement made by the prosecutor in her argument to the trial court appears to sum up the state's attitude:
 "So, even if the money — we think that we can prove inferentially or circumstantially that the money was derived from illegal use of drugs. But, even still by the defendant's own admission, it came from a gambling house and according to the gambling statute, that's not a cause to not forfeit it to the state."
Without a doubt, illegal drug activity is not to be tolerated. But in fighting illegal drugs, the state cannot curtail the individual liberties that were guaranteed to each of us by the United States Constitution. Those liberties were meant to protect us from the tyranny of the state. We must never allow the state to help itself to an individual's property merely because it suspects that the property had been used, or had been intended for use, in an illegal activity. Such an action smacks of totalitarianism. The haste with which the state was ready and willing to take Thompson's property without actual proof of either a drug transaction or illegal gambling is almost frightening.
The judgment of the trial court is reversed, and this cause is remanded for the trial court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
ROBERTSON, P.J., and YATES and CRAWLEY, JJ., concur in the result.
THOMPSON, J., dissents.