Waymon Eugene Gatlin appeals from a judgment ordering that $4,100 in currency be condemned as contraband and forfeited to the State because, the trial court found, the money "was used or intended to be used in a transaction for controlled substances." We reverse.
During the State's case-in-chief, the following evidence was elicited: In the early morning hours of July 4, 2001, Officer David Hicks of the Trinity Police Department stopped a Chevrolet truck for speeding. Gatlin was driving the truck. Hicks noticed the smell of alcohol on Gatlin's breath and asked him to perform three field-sobriety tests. When Gatlin failed all three tests, Officer Hicks arrested him for driving under the influence of alcohol. He was not charged with the use of any illegal drug.
Officer Hicks and two other officers then searched Gatlin's vehicle. Among other things, they found an open beer can in the truck. On top of the console between the seats the officers found a blue prescription bottle containing eight pills later determined to contain the controlled substance dihydrocodeinone. The prescription label on the bottle had been partially torn and there was no patient name, but the word "Lorcet" was visible. When the officers asked Gatlin about the pills, he said they were painkillers, but they were not his, and he did not know how they came to be in his truck. Inside the console, the officers found $4,100 in $100 bills. Except for two loose bills, the money was packaged in two bank wrappers marked "Heritage Bank" and stamped "April 9, 2001." Under the money was a small cellophane bag containing a green leafy substance later determined to be .03 ounces, or 1 gram, of marijuana. Gatlin denied that the marijuana was his. Also inside *Page 1092 
the console was one loose yellow pill later determined to contain the controlled substance oxycodone. Gatlin disclaimed any knowledge of the yellow pill. Gatlin told the officers the money came from his having cashed two or three paychecks. Trinity Police Chief Chris McLemore testified that the day after Gatlin was arrested and the currency was seized, Gatlin's mother telephoned him and said that the money was hers. On cross-examination by Gatlin's lawyer, Officer Hicks stated that Gatlin had a reputation as a drug dealer.
At trial, Gatlin denied that he was a drug dealer or a drug user. He said that he had never been arrested by officers of the Trinity Police Department. He testified that he had been employed for four years at BEK Construction Company; that he made $22 per hour; that he worked 40 hours per week plus overtime; and that he had had earnings in excess of $50,000 each year for the past two years. He introduced, and the trial court admitted into evidence, two income tax returns showing a gross income of $57,874 for the year 2000 and $52,647 for the year 1999. Gatlin stated that as a condition of his employment, he was required to take random drug tests. He introduced, and the trial court admitted into evidence, documents indicating that he had passed a number of drug tests administered by his employer, as well as an independent test to which he had submitted 20 days after his arrest.
Gatlin testified that at the time of his arrest he was separated from his wife, was living in a local motel, and was saving money to buy a camper in which to live. He said that he was going through a divorce; that he usually cashed his paychecks and did not deposit them into a checking account. He stated that he had cashed three recent paychecks totaling about $3,800, and had recently sold a pick-up truck for $5,800 in cash to his friend Paul Rollin. Rollin testified that he paid Gatlin for the truck in $100 bills, which he obtained from Heritage Bank. The record contains a bill of sale for the truck, dated April 10, 2001.
Gatlin said that after his arrest he learned that the pills in the blue prescription bottle belonged to his brother-in-law, who often borrowed his truck, and who had been prescribed painkillers after recent back surgery. Gatlin offered, and the trial court admitted into evidence, a prescription issued in the name of Gatlin's brother-in-law for the same pills found in Gatlin's truck.
At the close of the evidence, the trial court stated:
 "This is a hard one. The burden of proof is not beyond a reasonable doubt. If it was, I couldn't find for the state. But I do believe based on the totality of the circumstances, weighing the credibility of the witnesses, the state has carried the burden, and, therefore, I do grant the state's petition and condemn the funds."
To establish a prima facie case under § 20-2-93(4), Ala. Code 1975, the State was required to prove
 "`that the money seized was: (1) furnished or intended to be furnished by [Gatlin] in exchange for a controlled substance; (2) traceable to such a transaction; or (3) used or intended to be used to facilitate a violation of any law of this state concerning controlled substances.'"
Thompson v. State, 715 So.2d 224, 226 (Ala.Civ.App. 1997) (quoting Wherryv. State ex rel. Brooks, 637 So.2d 890, 892 (Ala.Civ.App. 1994)).
The mere proximity of the drugs to the cash in Gatlin's vehicle did not satisfy the State's burden of proof. See *Page 1093 Thompson v. State, supra. Our forfeiture cases have found the following circumstances to be indicative of contemplated or completed drug transactions: a large quantity of drugs, see, e.g., Shepherd v. State,664 So.2d 238 (Ala.Civ.App. 1995) (21 pounds of marihuana); drugs packaged for sale, see, e.g., Pointer v. State, 668 So.2d 41
(Ala.Civ.App. 1995); drug paraphernalia or accouterments indicating sale, such as "baggies" or scales, see, e.g., Johnson v. State, 667 So.2d 105,108 (Ala.Civ.App. 1995). None of those circumstances, nor an equivalent circumstance, is present in this case.
Our forfeiture cases have also remarked on the inherent incredibility of a defendant's explanation for having in his or her possession a large quantity of cash. See, e.g., Harris v. State, 821 So.2d 177 (Ala. 2001) (finding inherently incredible a defendant's story that the source of $120,000 in cash was a $90,000 payment the defendant received upon her husband's death 17 years earlier, an amount that the defendant said had increased to $120,000 despite the fact that the defendant admitted that she kept the money at home in shoe boxes and lent some to friends, but charged no interest). See also Vaughn v. State, 655 So.2d 1039, 1041
(Ala.Civ.App. 1995) (noting that the defendant, who was found with a large amount of cash, was unemployed and had "no visible means of support"). In the present case, Gatlin was gainfully employed and presented plausible explanations for the presence of the cash in his vehicle.
On review of a forfeiture judgment after an ore tenus proceeding, the trial court's judgment is presumed correct unless the record shows it to be contrary to the great weight of the evidence. See State v. Smith,578 So.2d 1374 (Ala.Civ.App. 1991). After reviewing the record, we conclude that the judgment in this case is against the great weight of the evidence. Although the evidence presented by the State might lead one to suspect that Gatlin was involved in illegal drug activity, mere suspicion is insufficient to support a judgment of forfeiture. SeeThompson v. State, 715 So.2d at 225; Robbs v. State ex rel. Whetstone,674 So.2d 1301 (Ala.Civ.App. 1995). The State presented no evidence indicating that Gatlin had participated in or that he was going to participate in a drug transaction. "To say that [Gatlin] had either just sold drugs or was on his way to buy drugs would be merely guessing."Thompson v. State, 715 So.2d at 226.
The judgment of the circuit court is reversed, and the cause is remanded for the circuit court to enter a judgment consistent with this opinion.
REVERSED AND REMANDED.
Yates, P.J., and Pittman and Murdock, JJ., concur.
Thompson, J., dissents.