PER CURIAM.
Willie Junior Williams appeals from the judgment of the Tuscaloosa Circuit Court (“the trial court”) ordering the forfeiture of $762 that was seized from Williams. The State of Alabama sought the forfeiture of the currency on the ground that it had been used or was intended to be used to buy marijuana.
The record indicates the following. On the evening of May 4, 2011, law-enforcement officers seized $762 from Williams during the search of a house in a Tuscaloosa residential area. The area was under a curfew because of the destruction resulting from a tornado that struck Tuscaloosa on April 27, 2011. Investigator K.D. Brantley of the Tuscaloosa Police Department (“TPD”) testified that, as he was patrolling the area, he saw a truck parked in front of the house with its lights off and the engine running. Investigator Brantley and another officer walked toward the truck to investigate and they noticed a strong smell of marijuana emanating from the truck. As Investigator Brantley approached the truck, the owner of the truck came out of the house. The officers spoke with the man and conducted a pat-down search, during which they discovered marijuana. Investigator Brantley said that, after find-' ing the marijuana, he began walking toward the house and another man came out of the house, closing the front door behind him. Investigator ■ Brantley said that, when he saw the police, the second man tried to go back into the house, but the door was locked.
Two other men “attempted to come out of the house,” Investigator Brantley said, but, when they saw him, they closed the door. According to Investigator Brantley, he knocked on the door and heard people running in the house. He said he went to the back of the house and found the back door “boarded up.” He testified that he heard what sounded like a toilet being flushed repeatedly. Investigator Brantley went back to the front door, and when backup officers arrived, the officers kicked down the door and entered the house. Inside, Investigator Brantley said, the officers discovered large amounts of marijuana throughout the house, as well as plastic wrapping, aluminum foil, and scales.
*776 Williams was sitting in the living room when the officers entered the house. Law-enforcement officials testified that the coffee table in front of Williams had “marijuana residue” on it, but no marijuana was found in the room. Agent Bobby Wind-ham, a member of the West Alabama Narcotics Task Force and the TPD, testified that he arrived at the scene after Investigator Brantley and other law-enforcement officials had already entered the house. Agent Windham said that-he did not believe that Williams would have been able to see the marijuana found in other parts of the house from where he was seated.
Investigator Brantley testified that Williams was not one of the men whom he saw come to the door of the house. He also testified that a man other than Williams was discovered flushing something down the toilet. Law-enforcement officials testified that, when they searched Williams, they found $762 in Williams’s pocket, but Williams did not have a key to the house, and he did not have any marijuana or drug paraphernalia in his possession. Agent Windham testified that he could not trace any of the money seized from Williams to an illegal-drug transaction. He testified that he asked Williams whether he was employed. Agent Wind-ham said that, after Williams said that he was not employed, he took no other steps to determine whether Williams had a legitimate source of income. Williams, along with the other men in the house, was arrested.
Williams testified that, the day before his money was seized, he had purchased a bus ticket to travel to Valdosta, Georgia. He said that he intended to travel to Val-dosta the night of May 4, 2011, to visit his son. The bus ticket, which was admitted into evidence, indicated that the bus was scheduled to leave Tuscaloosa at 11:15 p.m. on May 4, 2011. Williams said that, before going to catch the bus, he had stopped at his nephew’s house, which was next door to the house that the police raided. Williams said that, when he arrived, his nephew was in the shower, so he went next door, where he knew the neighbor, to learn the score of a professional-basketball playoff game being played that evening. Williams testified that he remained in the house to watch the game. He said that he did not “pay too much attention” to the marijuana on the coffee table, saying of the neighbors, “if they smoke, they smoke.” He said that while he was in the house, he did not leave the room where law-enforcement officials found him.
Records indicate that on April 8 and April 11, 2011, Williams had withdrawn cash totaling $1,800 from his checking account at Wachovia Bank. Williams testified that he withdrew the money to pay for the bus ticket and to have money to purchase gifts for his son. Williams testified that he usually worked as a barber but that he also worked construction. He said that he had been a labor foreman on a construction project in Miami, but, he said, when the project was completed, he was laid off. However, he said, he had received $550 in unemployment-compensation benefits every two weeks. Williams submitted his bank statement, which indicated that he had received $1,100 in April 2011 and corroborated his testimony. Evidence indicated that Williams lived with his mother and that he did not pay his mother rent but paid her “a little bit here and there.” On October 9, 2012, Williams pleaded guilty to trafficking in marijuana, apparently in connection with his May 2011 arrest. He was sentenced to a ten-year split sentence, pursuant to which he would serve three years in prison and the remainder of his sentence would be suspended while he served five years’ probation. Williams testified that he entered the plea because he had a four-year-old son and, *777 “[j]ust, you know, anything that would have kept me out of jail.”
After the hearing, the trial court found that, based on the evidence presented and the reasonable inferences to be drawn therefrom, it was reasonably satisfied that the $762 taken from Williams was used or was intended to be used in a transaction to purchase illegal drugs. Williams appealed.
On appellate review of a ruling from a forfeiture proceeding at which, like this case, the evidence was presented ore ten-us, the trial court’s findings of fact are presumed to be correct and a judgment based on those findings will not be reversed unless the record shows it to be contrary to the great weight of the evidence. Kuykendall v. State, 955 So.2d 442, 444 (Ala.Civ.App.2006); and Holloway v. State ex rel. Whetstone, 772 So.2d 475, 477 (Ala.Civ.App.2000). However, “that presumption [of correctness] has no application when the trial court is shown to have improperly applied the law to the facts.” Ex parte Board of Zoning Adjustment of the City of Mobile, 636 So.2d 415, 417 (Ala.1994).
Williams contends that the State failed to establish a prima facie basis for the condemnation and forfeiture of the $762 that was seized from him. Specifically, Williams asserts that the State failed to connect that money to a specific illegal transaction. He also asserts that the forfeiture judgment is against the great weight of the evidence.
Section 20-2-93(a)(4), Ala.Code 1975, under which the State obtained forfeiture of the $762, provides for forfeiture of
“[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all pro- - ceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances.”
‘“Under § 20-2-93 the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property. The standard of proof is reasonable satisfaction. The statute is penal in nature and, as such, should be strictly construed.’ ” Holloway v. State ex rel. Whetstone, 772 So.2d 475, 476 (Ala.Civ.App.2000) (quoting State v. Smith, 578 So.2d 1374,1376 (Ala.Civ.App.1991)).
In Holloway, supra, a City of Daphne police officer stopped Holloway for operating a vehicle without a license plate. When Holloway and two passengers exited the vehicle, the officer noticed a large bundle of cash near the driver’s seat. The officer obtained Holloway’s consent to search the vehicle and discovered $11,680 in cash and “ ‘quite a bit of marijuana stems and seeds on the floorboard.’ ” Holloway, 772 So.2d at 476. The State sought the forfeiture of the currency because, it alleged, ‘“[b]ased upon investigation by law enforcement officials it [was] believed that the money seized from Freddy L. Holloway on or about February 10, [1999,] [was] drug proceeds or was being used to violate [the] Alabama [Controlled] Substances statutes.’ ” Id. at 476. The circuit court ordered that the money be forfeited to the State.
This court reversed the judgment, holding that the circuit court’s finding that the currency “ ‘was used, or intended for use, in a transaction which would be a violation of the Alabama [Controlled] Substances Act’ [was] contrary to the great weight of the evidence” because law-enforcement officials had been unable to trace the $11,680 to “ ‘any specific drug transaction or any transaction [in] violation of the Alabama controlled substances law.’” Id. at 477.
*778 In Gatlin v. State, 846 So.2d 1090, 1092 (Ala.Civ.App.2002), this court held that “mere proximity” of controlled substances to cash does not satisfy the State’s burden of proof in a forfeiture case. The evidence in that case indicated that, after stopping Gatlin’s vehicle, police searched the vehicle and found a prescription bottle containing eight pills later determined to contain the controlled substance dihydrocodeinone. When the officers asked Gatlin about the pills, he said that they were painkillers, but that they were not his, and that he did not know how they came to be in his truck. Inside the console of the vehicle, the officers found $4,100 in $100 bills. Except for two loose bills, the money was packaged in two bank wrappers. A small cellophane bag containing a green leafy substance later determined to be .03 ounces, or 1 gram, of marijuana was found under the money. Gatlin denied that the marijuana was his. Police also found in the console a loose yellow pill later determined to contain the controlled substance oxycodone. Gatlin disclaimed any knowledge of the yellow pill.
Gatlin, who, according to police, had a reputation as a drug dealer, told the officers the money came from his having cashed two or three paychecks. After Gatlin’s arrest, his mother claimed that the money was hers. Id. at 1091-92. Gatlin presented evidence of his employment and submitted tax returns indicating that. he had earnings in excess of $50,000 each year for the two years preceding the forfeiture hearing. Additionally, he testified, shortly before he was stopped by police, he had sold a pickup truck for $5,800 in cash. Id. at 1092-93. In reversing the forfeiture judgment, this court stated that, “(a]l-though the evidence presented by the State might lead one to suspect that Gatlin was involved in illegal drug activity, mere suspicion is insufficient to support a judgment of forfeiture.” Id. at 1093.
Likewise in Ex parte McConathy, 911 So.2d 677, 685-88 (Ala.2005), our supreme court reversed this court’s affirmance of a judgment ordering the forfeiture of $8,000. The evidence in that case indicated that McConathy was arrested for possessing 23 Xanax pills, a controlled substance, which he had purchased from a confidential informant. After being arrested, McConathy was searched and police discovered $8,000 in cash, among other things, in his possession. McConathy testified that the cash came from the sale of his oil-change business.
Our supreme court stated there was no evidence linking the $8,000 to McConathy’s purchase of the Xanax pills. It also noted that McConathy had presented undisputed evidence as to the source of the seized currency, and the police were unable to trace the currency to “ ‘ “any specific drug transaction or any transaction (in] violation of the Alabama controlled substances law.’” Holloway, 772 So.2d at 477.” McConathy, 911 So.2d at 688. The supreme • court stated that “(t]he fact that McConathy had $8,000 on [the date of his arrest], and according to Officer Boyd he led the officers to believe that he was going to continue to purchase controlled substances is insufficient to establish a pri-ma facie case under § 20-2-93, Ala.Code 1975.” Id. Citing Gatlin, supra, the supreme court went on to conclude that “there is no concrete evidence tying the $8,000 to a specific drug transaction, past or future. To say that McConathy would use this $8,000 to purchase controlled substances at a future date is simply specula-. tion, and speculation will not support a judgment of forfeiture.” Id.
In its brief, the State relies heavily on the fact that Williams entered a guilty plea to trafficking marijuana. Williams testified at the forfeiture hearing *779 that he decided that entering a guilty plea was in his best interest because it minimized his sentence. As Williams points out, the issue in this forfeiture case is not whether he was guilty of a drug offense but whether there is a connection between the money seized from him and an illegal-drug transaction. In support of his contention, Williams cites Malholtra v. State, 717 So.2d 425, 426 (Ala.Civ.App.1998), in which this court stated: “Even once the State has established that a person is dealing in illegal drugs, it is not entitled to any and all of that person’s property.” In that case, Malholtra admitted to law-enforcement officials that he had purchased between three and four pounds of marijuana in Florida, had stored it in a mini-warehouse, and would take it out of the warehouse “as he needed it.” Id. at 426. Despite Malholtra’s clear admission that he had been dealing marijuana, this court reversed a judgment ordering the forfeiture of one of his vehicles because, we held, the State had been unable to connect it to any illegal-drug activity. Id.
Here, a review of the record indicates that there is no evidence connecting the $762 seized from Williams to a specific drug transaction. The law-enforcement officials who testified in this case could not link the money to any transaction involving illegal drugs. Williams provided evidence regarding the source of the money, and he produced the bus ticket that corroborated his assertion that he was leaving the evening of his arrest to visit his son in Valdosta. Although a significant amount of marijuana was found in the house, it is undisputed that Williams did not live in the house, and, as mentioned, “mere proximity” of controlled substances to cash does not satisfy the State’s burden of proof in a forfeiture proceeding. Gatlin, 846 So.2d at 1092; see also Holloway, 772 So.2d at 476.
After reviewing the record, we conclude that .the State failed to establish a prima facie case for the forfeiture of the $762 at issue and that the forfeiture judgment is against the great weight of the evidence. Accordingly, the judgment of the trial court is reversed, and. the cause is remanded to the trial court for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.
DONALDSON, J., recuses himself.