PER CURIAM.
This appeal arises from an in rem forfeiture action brought in the Cleburne Circuit Court by the State of Alabama on the relation of Eric N. Snyder, an assistant district attorney for Cleburne County. The complaint alleged, in pertinent part, that on April 11, 2016, a City of Heflin municipal police officer had issued a "traffic citation warning" to Marcel A. Blackwell ("the claimant") and had confiscated $13,325.30 in United States currency incident to arresting the claimant on a charge of second-degree marijuana possession; according to the complaint, the currency was subject to forfeiture under Ala. Code 1975, § 20-2-93, because, it was alleged, the currency had been "used or was intended to be used to facilitate a violation of the laws of this State concerning controlled substances" and "was being used or intended to be used by the owner to facilitate the sale, receipt or possession of a controlled substance, in violation of the laws of this State concerning controlled substances." The currency was named as a defendant, as was the claimant.
The claimant initially filed a pro se handwritten answer generally denying the allegations of the complaint; subsequently, counsel appeared for the claimant and filed an amended answer that raised no other defenses. The trial court then held an ore tenus proceeding at which the police officer, the claimant, and the claimant's wife testified and evidentiary exhibits were received. At the close of the State's evidence, the claimant orally moved for the entry of a judgment on partial findings (see Rule 52(c), Ala. R. Civ. P.);[1] that motion was denied. The trial court entered a judgment awarding the State $13,020 based upon a determination that that portion of the "currency was furnished, or intended to be furnished, by [the claimant] in exchange for a controlled substance, or was used or intended to be used to facilitate a violation of the laws of this State concerning controlled substances"; $305.30 of the currency was awarded to the claimant. The claimant filed a postjudgment motion on May 3, 2017, seeking relief under Rule 59, Ala. R. Civ. P., and also seeking to renew his dispositive motion that he had made at trial;[2] that motion was not granted or denied by the trial court on or before *78 August 1, 2017, and, therefore, that motion was denied pursuant to Rule 59.1, Ala. R. Civ. P., as of that date.[3]
The claimant raises two issues in his appeal, although, in essence, they resolve to a single issue: whether the trial court erred in failing to enter a judgment in the claimant's favor because, he says, the State failed to prove a connection between the $13,020 and a "specific violation" of Alabama's controlled-substances laws. That one issue is directed to the trial court's denial of the claimant's dispositive motion at trial, and the other is directed at the judgment eventually entered, which is of no import because the standard of review is the same: in either instance, "findings on disputed facts are presumed correct, and the trial court's judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust." Lawson v. Harris Culinary Enters., LLC, 83 So.3d 483, 491 (Ala. 2011). That principle of review applies specifically to civil-forfeiture judgments:
"A trial court's judgment in a forfeiture action is presumed to be correct and will be reversed only if it is contrary to the great weight of the evidence. 'In other words, a trial court's judgment based on ore tenus evidence will not be reversed absent a showing that it amounts to an abuse of discretion.' "
Hildreth v. State, 51 So.3d 344, 349 (Ala. Civ. App. 2010) (citations omitted; quoting Atkins v. State, 16 So.3d 792, 795 (Ala. Civ. App. 2009) ). "The ore tenus rule does not, however, extend to cloak a trial judge's conclusions of law or incorrect application of law to the facts with a presumption of correctness." $3,011 in United States Currency v. State, 845 So.2d 810, 814 (Ala. Civ. App. 2002).
The record in this action indicates that the claimant and his wife are residents of California; the claimant has a criminal record that includes, among other convictions, a 2005 federal conviction, which led to imprisonment, arising from an attempt to sell a narcotic substance. At trial, the claimant testified that he is an unlicensed automobile broker who does business under the name "Deals on Wheels," earning approximately $25,000 annually, and that he occasionally made money by preparing food for resale. The claimant and his wife testified that the wife had taken $4,500 from a retirement account and had given that money to the claimant to obtain a replacement car for her because her previous car had suffered an engine failure.
According to the claimant, the aunt of one of his longtime friends, Steve Latha, died in Louisiana, and the claimant testified that he traveled by air to Atlanta, Georgia, to visit with Steve and to assist in fundraising for the planned funeral for that aunt. The claimant testified that he brought on that trip with him the $4,500 supplied by his wife and that, while in Atlanta, he had contacted another friend in Louisiana who had informed him of the possibility of acquiring a 2004 model Honda Accord automobile there; the claimant testified that he had not acquired a return air ticket to California because he had planned to drive back to California using the automobile he was seeking to acquire.
The claimant testified that, after arriving in Atlanta, he and Latha and two female companions had spent a "couple of days ... hanging out, going to clubs, [and] partying"; the claimant also testified that he and others had raised approximately *79 $10,000 in funeral funds from washing automobiles and preparing meals in Atlanta and from a bake sale in California conducted by the claimant and his wife. According to the claimant's testimony, Latha had provided him a motor vehicle to use during his trip and had accumulated all of the currency representing the wife's car-purchase funds and the funeral funds and placed it in a single heat-sealed "Foodsaver" plastic bag on a bed at the home of one of Latha's paramours.
The police officer testified at trial that, on April 11, 2016, he had been stationed on Interstate 20 near mile marker 205 when he observed a red Nissan Versa automobile traveling westbound past his location "at a high rate of speed in the dark" in rainy conditions. After the police officer began following that automobile in his own patrol car, he observed that the Nissan failed to stay in its lane, and he performed a traffic stop near mile marker 199. Upon approaching the driver of the vehicle, who was the claimant, the police officer received the claimant's California driver's license and heard the claimant state that he was on his way from Atlanta to Louisiana. As the police officer stood beside the Nissan, he observed marijuana "stems and debris" in the center console near the emergency brake. The police officer asked the claimant to step out of the vehicle, and, when the claimant did so, the police officer observed a noticeable bulge and a piece of plastic inside the claimant's clothes near his pants line. According to the police officer, the claimant stated that the plastic contained $10,000 that was to be used to obtain a "vehicle hull" of which he had been made aware by a friend of his, but the claimant was unable to answer specifically from whom or from where he was going to obtain it. The police officer then placed the claimant under arrest and returned the heat-sealed currency bag to the front-passenger seat of the vehicle, where the police officer's service dog gave a positive "passive stop stare" on the passenger-side door of the Nissan. A warning citation describing the traffic offense prompting the police officer's stop bears the local (Central) time of 9:12 p.m.
The police officer also obtained a number of papers from the Nissan that were introduced into evidence, including:
1. A rental agreement for a red Nissan Versa automobile issued on March 2, 2016, to "Lakeidre Randle" by an affiliate of Enterprise Holdings, Inc., based in Monroe, Louisiana, showing a rental return date of March 7, 2016, and indicating that no other drivers were permitted;
2. Receipts dated March 7, 2016, from the West End U.S. Postal Service branch in Atlanta, Georgia, evidencing the purchase by Steve Latha of Monroe, Louisiana, of two $1,000 money orders and of Priority Mail Express postage for a 2-pound, 8-ounce parcel sent to Los Angeles, California, between 2:45 and 2:47 p.m.;
3. Receipts dated March 7, 2016, evidencing bank-account deposits of $3,000 at a branch of JPMorgan Chase Bank at 3:02 p.m. and of $1,700 at a branch of Wells Fargo Bank at 3:18 p.m.;
4. Two illegible customer receipts from Bank of America and an undated deposit slip bearing a handwritten 12-digit account number and a deposit amount of either $4,200 or $4,500;
5. A receipt from a Dunwoody, Georgia, department store dated March 7, 2016, indicating a purchase transaction of two items totaling $139.04;
6. Two receipts from fast-food restaurants located in Monroe, Louisiana, dated March 22, 2016, and March 24, 2016;
7. A receipt dated April 10, 2016, from a discount retailer in Lithia Springs, *80 Georgia, evidencing a purchase of luggage and gum for $86.96;
8. A receipt from the Mableton, Georgia, U.S. Postal Service branch evidencing a purchase of two $1,000 money orders at 1:05 p.m. on April 11, 2017;
9. A receipt from the Lithia Springs, Georgia, U.S. Postal Service branch evidencing a purchase of a $1,000 money order at 2:12 p.m. on April 11, 2016;
10. Receipts from the Mableton, Georgia, U.S. Postal Service branch evidencing a purchase by "Steve L" of Monroe, Louisiana, of postage for a flat-rate envelope sent to an illegible recipient in Long Beach, California, at 2:55 p.m. on April 11, 2016;
11. A receipt from a discount retailer in Austell, Georgia, evidencing the purchase of electronics equipment at 9:22 p.m. local (Eastern) time on April 11, 2016 (which was approximately 50 minutes before the warning citation was issued to the claimant in Alabama); and
12. A sealed permit dated September 8, 2015, issued by a consulting physician based in California and bearing the claimant's name and photograph, stating that the claimant "qualifies under California [law] for the use of cannabis for medical purposes" for one year and that the claimant "assumes full responsibility for any and all risks associated with this treatment option."
At trial, the claimant denied having any knowledge of any of the documents obtained from the Nissan except the cannabis permit.
The heat-sealed plastic bag that was being transported by the claimant at the time of his traffic stop was opened by Heflin municipal police officers, and the currency therein, consisting of $20, $50, and $100 bills, was counted, revealing a total amount of $13,020. An additional amount of $305.30 was found in the claimant's wallet. The claimant pleaded guilty to the offense of second-degree possession of marijuana (see generally Ala. Code 1975, § 13A-12-214 ); he was sentenced to "time served" and was directed to undergo substance-abuse treatment in California.
The text of Ala. Code 1975, § 20-2-93(a)(4), provides for the forfeiture of (1) "[a]ll moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state"; (2) "all proceeds traceable to such an exchange"; and (3) "all moneys ... used or intended to be used to facilitate any violation of any law of this state concerning controlled substances" (emphasis added). In forfeiture proceedings brought under that statute, it is the State's burden to establish a prima facie case, and the standard of proof is reasonable satisfaction. Williams v. State, 46 So.3d 3, 4-5 (Ala. Civ. App. 2010). Further, § 20-2-93 is a statute that is deemed penal in nature and is to be strictly construed. Ex parte McConathy, 911 So.2d 677, 681 (Ala. 2005). In accordance with those principles of law, the appellate courts of this state have stated (a) that "mere proximity of ... drugs to ... cash in [a motor] vehicle [does] not satisfy the State's burden of proof" ( Gatlin v. State, 846 So.2d 1090, 1092 (Ala. Civ. App. 2002) ); (b) that "evidence presented by the State [that] might lead one to suspect that [a possessor of currency] was involved in illegal drug activity ... is insufficient to support a judgment of forfeiture" ( id. at 1093 ); and (c) that a lack of "concrete evidence tying [currency] to a specific drug transaction, past or future," will warrant reversal of a forfeiture judgment ( McConathy, 911 So.2d at 688 ).
In this case, on cross-examination by counsel for the claimant, the police officer admitted that the search undertaken by *81 his service dog merely indicated the presence of drugs somewhere in the Nissan; that the amount of marijuana found in the Nissan did not meet the elements sufficient to charge the claimant with possession of marijuana with intent to sell; and that he had found no paraphernalia, baggies, or scales related to drug activities in the Nissan. The police officer further admitted that none of the receipts found in the Nissan bore the claimant's name (although some bore Steve Latha's name); that none of the receipts could be connected to the claimant other than by his "constructive possession" and that they could have been left behind in the Nissan by "someone else who the car was rented by"; and that none of the receipts indicated any transactions in Alabama. Finally, the police officer admitted that he had been independently unable to find any information regarding any source, either legitimate or illegitimate, of the funds seized from the claimant.
To be sure, the evidence adduced by the State indicated that the Nissan automobile that the claimant was operating when stopped by the police officer had been a rental vehicle obtained from a Louisiana agency in March 2016 and that some occupant of the Nissan (such as Steve Latha, whose name appears on two of the postal receipts) had mailed parcels to California and had made a number of relatively large bank deposits of cash and purchases of money orders on both March 7 and April 11, 2017. However, the State adduced no evidence tending to show that the claimant had been in Georgia for more than a couple of days before April 11, 2016, or that the claimant had made any of the documented monetary transactions or, alternatively, had been in possession of the Nissan for any significant amount of time before beginning a trip from Georgia into Alabama on his way to Louisiana. Indeed, judging from the scant 50-minute period between the time of the final Georgia sales receipt and the issuance of the traffic-violation warning citation, it would appear that both the claimant and the currency were taken into custody mere minutes after the Nissan could have entered Alabama from Georgia. Thus, although some or all of the currency seized from the claimant might not be traceable to legitimate business enterprises engaged in by the claimant, there remains no evidence linking that money to a specific drug transaction, past or future, in violation of Alabama law, as McConathy would require.
The State seeks, on appeal, to defend the forfeiture judgment by relying on Wherry v. State ex rel. Brooks, 637 So.2d 1353 (Ala. Civ. App. 1994), for the proposition that its burden in a forfeiture action with respect to currency is solely to show some connection between that currency and a violation of Alabama's controlled-substance laws. We find Wherry distinguishable. In that case, evidence that specific prerecorded bills, which had previously been used by a police informant in making "controlled buys" of cocaine from a forfeiture claimant and had been recovered from that claimant's residence in connection with his drug arrest, was held to have established a prima facie case in favor of forfeiture. Here, however, the currency seized from the claimant's person was not shown to have any connection to a specific drug transaction, but was merely shown to have been in proximity to marijuana residue in the claimant's constructive possession in the Nissan automobile. Similarly, we conclude that Johnson v. State, 667 So.2d 105 (Ala. Civ. App. 1995), is distinguishable because the currency recovered from the claimant in this case was found on his person rather than, as was the case in Johnson, in a common container with drug residue and paraphernalia (667 So.2d at 108). Finally, we conclude that *82 Harris v. State, 821 So.2d 177 (Ala. 2001), is distinguishable because the trial court in that case was presented testimony tending to show that a residence from which $165,501 had been seized was the site of a series of transactions, taking place over nine months, in which persons had come to the residence with bags of currency and had left with bags containing illegal drugs, none of which is present in this case.
Based upon the foregoing facts and authorities, we agree with the claimant that the State failed to make a prima facie showing that the currency recovered from him on April 11, 2016, was furnished in violation of Alabama law in exchange for a prohibited controlled substance, was traceable to an exchange prohibited by Alabama law, or was used or was intended to be used to facilitate a violation of Alabama controlled-substances laws.[4] As a result, the judgment in favor of the State was erroneous as a matter of law. We therefore reverse the judgment of the trial court and remand the cause for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
All the judges concur.

The actual language used by counsel for the claimant was "motion for a directed verdict," which is a long-superseded procedural vehicle for seeking a favorable judgment as a matter of law during a jury trial. See generally Reeves v. Fancher, 210 So.3d 595, 598 (Ala. Civ. App. 2016).

Although the claimant cited Rule 50, Ala. R. Civ. P., as authority, the nonjury nature of the trial renders that characterization inaccurate; rather, as noted earlier, a motion made pursuant to Rule 52 is the proper procedural vehicle. See Carr v. Added Dimensions No. 72 Brookwood, Inc., 772 So.2d 473, 474 (Ala. Civ. App. 2000).

The trial court entered an order on August 17, 2017, purporting to expressly deny the claimant's postjudgment motion; however, that order is a nullity. See, e.g., Moragne v. Moragne, 888 So.2d 1280, 1282 (Ala. Civ. App. 2004).

We expressly disclaim any comment on whether, on the facts of this case, the currency seized would have been subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).