Rel: May 3, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2023-2024

_____

### CL-2023-0412

_____

### Jeremy S. Mitchem

v.

### State of Alabama ex rel. Robert Broussard, District Attorney for the Twenty-Third Judicial Circuit

### Appeal from Madison Circuit Court
### (CV-20-901674)

HANSON, Judge.

Jeremy S. Mitchem appeals from a judgment entered by the

Madison Circuit Court ("the trial court") ordering the forfeiture of $6,646

in United States currency ("the currency") to the State of Alabama. We reverse the trial court's judgment.

### Procedural History

On December 9, 2020, Robert L. Broussard, the district attorney for the Twenty-Third Judicial Circuit of Alabama, commenced, on behalf of the State, a forfeiture action seeking to condemn the currency, which, according to the complaint, had been seized from Mitchem's possession and should be forfeited to the State pursuant to former Ala. Code 1975, § 20-2-93.[1] Mitchem filed an answer to the complaint, and, on May 8, 2023, a trial was conducted. On May 15, 2023, the trial court entered a judgment concluding that the State had "established a prima facie case as to certain property sought to be forfeited" and declaring that the currency was "contraband" and was "forfeited to the [State] for use in law enforcement." On May 25, 2023, Mitchem filed a postjudgment motion. On June 2, 2023, Mitchem filed a notice of appeal to this court; pursuant to Rule 4(a)(5), Ala. R. App. P., the notice of appeal was held in abeyance until August 23, 2023, the date on which Mitchem's postjudgment motion was denied by operation of law. See Rule 59.1, Ala. R. Civ. P.

---

[1]Section 20-2-93 was amended effective January 1, 2022.

## Facts

The evidence indicates that the currency was seized as the result of a traffic stop that occurred on November 27, 2020. Jesse McKinney, a deputy with the Madison County Sheriff's Office, testified that he and another deputy had observed an automobile with an expired tag sitting for "a strange amount of time" at a gas pump at a fueling station and that, once the vehicle left the station, he and the other deputy had initiated a traffic stop on the vehicle, which did not stop. McKinney stated that he had engaged in a chase of the vehicle, that the chase had covered approximately 26 miles and had reached speeds up to 100 miles per hour, and that the vehicle had eventually collided with another patrol unit, after which the vehicle had come to a stop. McKinney testified that Mitchem had been the driver of the vehicle that had been involved in the chase, that Mitchem had been removed from the vehicle and taken into custody, and that McKinney had, upon Mitchem's being removed from the vehicle, begun to inventory the vehicle. On direct examination by counsel for the State, McKinney testified as follows regarding what was discovered inside the vehicle:

> "Q. Okay. And during the course of the inventory of that vehicle what did you find, sir?

"[McKinney:] We found a variety of different drugs and narcotics and a decent sum of money.

"Q. Would it be safe to say that you found methamphetamines, pills of various types --

"[McKinney:] That's correct.

"Q. -- some stuff that you believed to be molly and another water bottle that you believed to contain GHB?

"[McKinney:] That's right."

McKinney testified that, after locating those items in Mitchem's vehicle, he had contacted narcotics officers. He testified that, upon a search of Mitchem's person, only the currency was found.

Josh Moseley, an investigator with the Madison County sheriff's office, testified that he had responded to the scene after narcotics were located in Mitchem's vehicle and that he had interviewed Mitchem and had advised him of his rights. He stated that Mitchem had agreed to speak to him and that Mitchem had stated that he had been the only occupant in the vehicle, that the drugs found in the vehicle belonged to him, and that "he sells narcotics because ... '[i]t's hard out here.'" According to Moseley, Mitchem stated that "he sells a quarter ounce of weed for sixty dollars, a whole ounce of weed for a hundred and twenty

4

dollars, and an ounce of ICE or methamphetamine for six hundred dollars." He testified that Mitchem had consented to a search of his hotel room and that a search of that room had been conducted. Moseley then testified on direct examination by counsel for the State as follows:

"Q. And was any contraband found in the hotel room that you know of?

"[Moseley:] I don't recall if there was anything found in the hotel room or not.

"Q. All right. In addition to drugs found, was there an amount of money found?

"[Moseley:] There was. It was --

"Q. Was that six thousand, six hundred and forty-six dollars?

"[Moseley:] Six thousand, six hundred and fifty-six, I believe.

"Q. And was that on [Mitchem] -- in [Mitchem]'s possession?

"[Moseley:] It was, yes, sir.

"Q. And was he arrested on the charges in this case? Was he arrested for possession?

"[Moseley:] I believe so, but I don't recall because that would have been [another investigator's] paperwork for the arrest."

Moseley testified that he had been present for the conversation that had taken place during which Mitchem had admitted to selling drugs and had claimed ownership of the drugs that were found.

Mitchem testified that he had "been arrested quite a bit." He recalled having been tried and convicted for trafficking in methamphetamine in 2018. Mitchem stated that, on the occasion leading to his arrest in the present case, he had borrowed a vehicle to pick up some mail from his mother's house and to take Thanksgiving dinner to someone. He stated that he did not know anything about the drugs in the vehicle, "if they even were drugs." He testified that his father had given him the currency that was found in his possession to purchase a vehicle and that it "had nothing to do with any kind of illegal activities." He stated that he had not stopped the vehicle and had sped off because he "had warrants."

The State submitted as an exhibit a jury-verdict form and a sentencing order dated March 31, 2022, from a criminal case involving Mitchem; those documents indicated that Mitchem had been sentenced to imprisonment on that date on charges of burglary and trafficking in a controlled substance. The State's counsel acknowledged that, although

6

that exhibit did not "pertain to the facts of [the present case], it shows

pattern or practice."

Standard of Review

In <u>Wilson v. State</u>, 296 So. 3d 321, 326 (Ala. Civ. App. 2019), this

court outlined the applicable standard of review to be applied in a civil-

forfeiture proceeding:

> "'On appellate review of a ruling from a forfeiture proceeding at which the evidence was presented ore tenus, the trial court's judgment is presumed to be correct unless the record shows it to be contrary to the great weight of the evidence.' <u>Ex parte McConathy</u>, 911 So. 2d [677, 681 (Ala. 2005)]. 'The ore tenus rule does not, however, extend to cloak a trial judge's conclusions of law or incorrect application of law to the facts with a presumption of correctness.' <u>$3,011 in United States Currency v. State</u>, 845 So. 2d 810, 814 (Ala. Civ. App. 2002). We review such questions de novo. <u>See</u>, <u>e.g.</u>, <u>South Alabama Brick Co. v. Carwie</u>, 214 So. 3d 1169, 1175 (Ala. 2016)."

Analysis

The version of § 20-2-93 that was in effect at the time of the filing

of the complaint in the present case provided, in pertinent part:

> "(a) The following are subject to forfeiture:
>
> "....
>
> "(4) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in

7

> exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances."

"'Under [former] § 20-2-93 the State must establish a prima facie case for the seizure, condemnation, and forfeiture of the property. The standard of proof is reasonable satisfaction. The statute is penal in nature and, as such, should be strictly construed.'" Holloway v. State ex rel. Whetstone, 772 So. 2d 475, 476 (Ala. Civ. App. 2000) (quoting State v. Smith, 578 So. 2d 1374, 1376 (Ala. Civ. App. 1991)).

Mitchem asserts on appeal that the trial court erred in concluding that the State had made a prima facie case justifying forfeiture of the currency and that the judgment is unsupported by the evidence presented. He cites in support of his argument, among other cases, Ex parte McConathy, 911 So. 2d 677 (Ala. 2005). In McConathy, our supreme court reversed a judgment ordering the forfeiture of $8,000 in United States currency following the detention of Jeffrey Daren McConathy for possession of a controlled substance. 911 So. 2d at 678. The evidence in McConathy indicated, in pertinent part, that McConathy was arrested after purchasing Xanax pills from a confidential informant

and that, following his arrest, McConathy was searched. Police discovered $8,000 in United States currency in his possession. Id. at 678-79. McConathy testified that he had earned the $8,000 from the sale of his oil-change business and that he had had no intention of spending the $8,000 to purchase drugs. Id. at 680. Our supreme court noted that "[t]he mere presence of money in the proximity of controlled substances is insufficient to justify the forfeiture of the money." Id. at 682. It acknowledged that the State of Alabama had failed to establish a connection between the Xanax pills and the $8,000 in United States currency and that there was no direct link between the $8,000 and the supposed future purchase of controlled substances, despite evidence presented by the State indicating that McConathy had indicated that he intended to continue purchasing controlled substances. Id. In concluding that the judgment ordering forfeiture in that case was against the great weight of the evidence, our supreme court stated, in pertinent part:

> "The fact that McConathy had $8,000 on December 18, 2002, and according to Officer Boyd he led the officers to believe that he was going to continue to purchase controlled substances is insufficient to establish a prima facie case under [former] § 20-2-93, Ala. Code 1975. As the court noted in Gatlin [v. State], [846 So. 2d 1090 (Ala. Civ. App. 2002)], '[a]lthough the evidence presented by the State might lead one to suspect that Gatlin was involved in illegal drug activity,

9

mere suspicion is insufficient to support a judgment of forfeiture.' 846 So. 2d at 1093. As was the case in <u>Gatlin</u>, there is no concrete evidence tying the $8,000 to a specific drug transaction, past or future. To say that McConathy would use this $8,000 to purchase controlled substances at a future date is simply speculation, and speculation will not support a judgment of forfeiture."

911 So. 2d at 688.

In the present case, the State argues that there was no mere suspicion that Mitchem was engaged in the drug trade and that the trial court could have reasonably inferred from the evidence that the currency found on Mitchem[2] had resulted from one, or several, previous drug transactions. The State cites the evidence indicating that Mitchem had been convicted of drug trafficking in an unrelated case, which, it argues, is "indicative of [Mitchem's] habits." State's brief, p. 16. Mitchem cites this court's decision in <u>Bolden v. State</u>, 127 So. 3d 1195 (Ala. Civ. App. 2012), in which we reversed a judgment ordering the forfeiture of $8,265 in United States currency that had been found in the glove compartment of an automobile driven by Richard L. Bolden. This court determined

---

[2]The State maintains throughout its brief on appeal that the currency was found in Mitchem's hotel room. We note, however, that the testimony indicates instead that the currency was found on Mitchem's person.

10

that "[e]vidence indicating that Bolden ha[d] sold drugs at some indefinite time in the past coupled with the discovery of $8,265 in his vehicle [wa]s insufficient to establish that the $8,265 was due to be forfeited." Id. at 1201. Similarly, in the present case, although the State presented evidence indicating that Mitchem had engaged in the sale of drugs at some indefinite time, there was no concrete evidence tying the currency found on his person to a specific drug transaction.

In Gatlin v. State, 846 So. 2d 1090, 1093 (Ala. Civ. App. 2002), this court acknowledged that

> "[o]ur forfeiture cases have found the following circumstances to be indicative of contemplated or completed drug transactions: a large quantity of drugs, see, e.g., Shepherd v. State, 664 So. 2d 238 (Ala. Civ. App. 1995) (21 pounds of marihuana); drugs packaged for sale, see, e.g., Pointer v. State, 668 So. 2d 41 (Ala. Civ. App. 1995); drug paraphernalia or accouterments indicating sale, such as 'baggies' or scales, see, e.g., Johnson v. State, 667 So. 2d 105, 108 (Ala. Civ. App. 1995)."

Like in Gatlin, none of those circumstances, nor an equivalent circumstance, is present in this case. Although McKinney testified that he had found a "variety of different drugs and narcotics" in the vehicle that Mitchem was driving, there is no evidence indicating the amounts of the various drugs that were found. Thus, that evidence would not

11

support a conclusion that the drugs were of a quantity large enough to indicate that the currency related to a contemplated or completed drug transaction. The evidence also does not indicate that the drugs that were found in the vehicle driven by Mitchem were packaged for sale or were accompanied by any additional items indicating their intended sale.

In McConathy, our supreme court noted that McConathy had "presented undisputed evidence as to the source of the seized currency, and the officers were unable to trace the seized currency to '"any specific drug transaction or any transaction [in] violation of the Alabama controlled substances law."'" 911 So. 2d at 687-88 (quoting Holloway, 772 So. 2d at 477). Similarly, in the present case, Mitchem testified that his father had given him the currency to purchase a vehicle.[3] The State failed to present any evidence contradicting that testimony or tying the currency to a specific drug transaction, past or future. Like in McConathy, in which McConathy indicated his intention to continue purchasing controlled substances, Mitchem's statements in the present

---

[3]We note that Mitchem attached as an exhibit to his postjudgment motion the affidavit of his father, who asserted therein that he had given money to Mitchem. There is no indication that the trial court considered that affidavit, however, and we have not considered it in rendering our opinion in this case.

12

case that he sells drugs and his conviction for an unrelated drug offense are insufficient to tie the currency to a specific drug transaction in the past or in the future, the occurrence of which was only speculative based on the evidence presented.

Based on the foregoing, we conclude that the judgment in this case is against the great weight of the evidence. Accordingly, we reverse the trial court's judgment and remand the case to the trial court for the entry of a judgment consistent with this opinion.

REVERSED AND REMANDED.

Moore, P.J., and Fridy and Lewis, JJ., concur.

Edwards, J., dissents, with opinion.

EDWARDS, Judge, dissenting.

I respectfully dissent. In my opinion, the evidence presented to the Madison Circuit Court ("the trial court") was sufficient to provide a basis for that court to have determined that it was reasonably satisfied that the $6,646 in United States currency ("the currency") seized by the Madison County Sheriff's Department ("the department") was used in the facilitation of a violation of the version of the Alabama Uniform Controlled Substances Act ("the Act"), Ala. Code 1975, § 20-2-1 et seq., then in effect. Therefore, I would affirm the judgment of the trial court forfeiting the currency pursuant to former Ala. Code 1975, § 20-2-93(b)(3).

As the main opinion states, the testimony and documentary evidence at trial indicated that officers employed by the department had detained Jeremy Mitchem and had secured the currency during a search of Mitchem and the Chevy Tahoe sports-utility vehicle ("the vehicle") he had been driving. Officer Jesse McKinney testified that he and his partner, Deputy Tower, had noticed the vehicle at a gas station and that they had decided to pull over the vehicle after verifying that the tag was expired. According to Officer McKinney, when he initiated the traffic

14

stop, Mitchem did not pull the vehicle over; instead, he led the officers on a high-speed chase, which, McKinney said, had ended when the vehicle collided with a patrol vehicle. Officer McKinney testified that, during the ensuing search of the vehicle, "[w]e found a variety of different drugs and narcotics and a decent sum of money." He indicated that the controlled substances found in the vehicle included methamphetamine, "molly," and pills of various types.

Josh Moseley, an investigator with the department, testified that he and his partner, Investigator Region, had interviewed Mitchem subsequent to the events recounted above. Moseley explained that Mitchem had admitted that the drugs found during the search of the vehicle were his and that "he sells narcotics because and I quote 'It's hard out here.'" According to Moseley, Mitchem had explained that "he sells a quarter ounce of weed for sixty dollars, a whole ounce of weed for a hundred and twenty dollars, and an ounce of ICE or methamphetamine for six hundred dollars."

During his testimony, Mitchem admitted that he had been convicted of a charge of trafficking methamphetamine; the sentencing order for that charge was admitted as evidence. He testified, however,

that he had not had knowledge about the drugs that were located during the search of the vehicle, which, he said, he had borrowed. He also explained that the currency was not related to any illegal activity, stating, "my dad had gave [sic] me that money to buy a vehicle." When asked why he had sped away from the traffic stop, Mitchem testified that he had done so because he had outstanding warrants.

Unlike the majority, I am not convinced that Ex parte McConathy, 911 So. 2d 677 (Ala. 2005), requires a reversal of the trial court's judgment. In Ex parte McConathy, our supreme court reversed this court's no-opinion order affirming the judgment entered by the Shelby Circuit Court forfeiting $8,000 in United States currency. 911 So. 2d at 688. Our supreme court explained that the State of Alabama had not presented sufficient evidence to support a conclusion that the $8,000 had been used or was intended to be used to facilitate a violation of the Act.

The defendant in Ex parte McConathy had been accused solely of purchasing a controlled substance, specifically 23 Xanax pills, for $67. Id. at 678-79. At the time he was detained by law-enforcement officers, McConathy had in his possession $8,000 in cash and a $9,000 cashier's check. Id. at 679. McConathy had testified and had provided

16

documentary evidence indicating that the $8,000 in his possession was the remaining proceeds of a check for $12,000 that he had received from the sale of real property that had occurred 10 days before the seizure. Id. at 680. Our supreme court stressed that the State had not contended that McConathy was a "drug dealer" and determined that the evidence had not been sufficient to establish that the $8,000 was related in any way to the sale or purchase of drugs by McConathy. Id. at 681. Our supreme court specifically concluded that, because "McConathy [had] presented undisputed evidence as to the source of the seized currency, and the officers were unable to trace the currency to '"any specific drug transaction or any transaction [in] violation of the Alabama controlled substances law,"'" the Shelby Circuit Court's judgment was supported by only speculation that McConathy might use the $8,000 to purchase drugs at some future date. Id. at 687-88 (quoting Holloway v. State ex rel. Whetstone, 772 So. 2d 475, 477 (Ala. Civ. App. 2000)).

In the present case, however, the evidence presented to the trial court indicates that Mitchem admitted that the drugs found in the search of the vehicle he was driving were his and that he sold "narcotics because … 'It's hard out here.'" The drugs found during the search of the vehicle

17

were of various types, including methamphetamine, "molly," and various pills, and Mitchem had informed the investigators of the prices for which he sold various controlled substances. Documentary evidence further established that Mitchem had pleaded guilty to drug trafficking, specifically, trafficking methamphetamine, one of the drugs that was found in the search of the vehicle. Although in his own testimony Mitchem disavowed knowledge of the drugs found in the vehicle and although Mitchem testified that his father had given him the currency so that he could purchase a vehicle and that the currency was not related to any drug transactions, Mitchem provided no testimony other than his own to establish the reason for his having the currency on his person. In light of Mitchem's previous conviction for drug trafficking, his admission to Moseley that he was a "drug dealer," and the testimony indicating that Mitchem had informed Moseley of the prices that he currently charged for the drugs that he sold, the trial court could have rejected, and clearly did reject, Mitchem's testimony indicating that the currency was not related to any illegal activity. Thus, I believe that the evidence before the trial court was sufficient for that court to be reasonably satisfied that the currency was related to a violation of the Act.